UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

THE CITY OF NEW YORK,

No. 22-cv-3306-RA-JLC

               Plaintiff,

    -against-

HARLEYSVILLE INSURANCE COMPANY,

               Defendant.

------------------------------------------------------------------------x


## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT


HON. SYLVIA O. HINDS-RADIX
*Corporation Counsel of the City of New York*
Attorney for Plaintiff

By:    Daniel R. Whitman
        Assistant Corporation Counsel
        100 Church Street, 20th Floor
        New York, NY 10007
        (212) 356-2283
        dwhitman@law.nyc.gov


Dated:  November 9, 2022
       New York, New York

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................................II

PRELIMINARY STATEMENT ...................................................................................... 1

UNDISPUTED FACTS ................................................................................................... 2

    I.   THE INSURANCE POLICY .................................................................... 2

    II.  THE UNDERLYING ACTION AND HARLEYSVILLE'S REFUSAL TO
        DEFEND THE CITY .................................................................................. 3

    III. HARLEYSVILLE'S IMPROPER AND UNTIMELY DISCLAIMERS AS TO
        THE UNDERLYING ACTION ................................................................ 5

ARGUMENT ................................................................................................................... 6

    I.   HARLEYSVILLE HAS A DUTY TO DEFEND THE CITY IN THE
        *CALDERON* ACTION. ............................................................................ 6

        A.  The Scope of the Duty to Defend is Exceedingly Broad. ................................. 6

        B.  The City Is an Additional Insured Under the Policy and Is Entitled to a
            Defense in the Underlying *Calderon* Action. ................................................... 8

        C.  The Bases for Harleysville's April 25, 2022 Disclaimer of Coverage Are
            Entirely Without Merit. ..................................................................................... 11

        D.  Harleysville Waived Any Other Possible Bases for Denying Coverage,
            Including Those Bases in its Untimely May 11, 2022 Disclaimer. ................. 13

    II.  THE CITY IS ENTITLED TO RECOVER THE COSTS AND FEES IT HAS
        INCURRED DEFENDING ITSELF IN THE UNDERLYING ACTION. ................. 16

CONCLUSION .............................................................................................................. 18

# TABLE OF AUTHORITIES

**Cases**

*2833 Third Ave. Realty Assocs. v. Marcus*,
  12 A.D.3d 329 (1st Dep't 2004) ........................................................ 15

*Abeyta v. City of N.Y.*,
  12-cv-5623, 2014 U.S. Dist. LEXIS 33766 (S.D.N.Y. Mar. 7, 2014)..................... 17

*ACP Servs. Corp. v. St. Paul Fire & Marine Ins. Co.*,
  224 A.D.2d 961 (4th Dep't 1996) ...................................................... 17

*Adams v. N.Y. State Educ. Dep't*,
  630 F. Supp. 2d 333 (S.D.N.Y. 2009) .................................................. 17

*Allcity Ins. Co. v. Jimenez*,
  78 N.Y.2d 1054 (1991) ................................................................ 15

*Automobile Ins. Co. of Hartford v. Cook*,
  7 N.Y.3d 131 (2006) ............................................................... 8, 11

*Bovis Lend Lease LMB, Inc. v. Royal Surplus Lines Ins. Co.*,
  44 A.D.3d 307 (1st Dep't 2007) ....................................................... 15

*BP Air Conditioning Corp. v. One Beacon Ins. Group*,
  8 N.Y.3d 708 (2007) .............................................................. 6, 12

*Campos v. Sarro*,
  309 A.D.2d 888 (2d Dep't 2003) ....................................................... 15

*Century 21, Inc. v. Diamond State Ins. Co.*,
  442 F.3d 79 (2d Cir. 2006) ............................................................ 7

*City of New York v. Harleysville Ins. Co.*,
  No. 22-cv-3306, 2022 U.S. Dist. LEXIS 143039 (S.D.N.Y. Aug. 10, 2022)............. 14, 15

*City of New York v. St. Paul Fire & Marine Ins. Co.*,
  21 A.D.3d 978 (2d Dep't 2005) ........................................................ 14

*City of New York v. Venkataram*,
  06-cv-6578, 2012 U.S. Dist. LEXIS 99814 (S.D.N.Y. July 17, 2012)..................... 17

*City of New York v. Wausau Underwriters Ins. Co.*,
  145 A.D.3d 614 (1st Dep't 2016) ...................................................... 11

*Colon v. Aetna Life & Cas. Ins. Co.*,
  66 N.Y.2d 6 (1985)................................................................. 8, 16

*Del Bellow v. General Acc. Ins. Co.*,
   185 A.D.2d 691 (4th Dep't 1992) .................................................................. 8

*E.F. v N.Y.C. Dep't of Educ.*,
   11-cv-5243, 2012 U.S. Dist. LEXIS 162810 (S.D.N.Y. Nov. 8, 2012) ................... 17

*Employers Ins. Co. v. General Star Nat'l Ins. Co.*,
   No. 03 Civ. 6575 (DLC), 2004 U.S. Dist. LEXIS 12904 (S.D.N.Y. July 9, 2004) ................ 17

*Endurance Am. Specialty Ins. Co. v. Utica First Ins. Co.*,
   132 A.D.3d 434 (1st Dep't 2015) .................................................................. 15

*First Fin. Ins. Co. v. Jetco Contracting Corp.*,
   1 N.Y.3d 64 (2003) ............................................................................ 14, 15

*Fitzpatrick v. American Honda Motor Co.*,
   78 N.Y.2d 61 (1991) ..................................................................... passim

*Frontier Insulation Contrs. v. Merchants Mut. Ins. Co.*,
   91 N.Y.2d 169 (1997) .................................................................... passim

*Gen. Accident Ins. Grp. v. Cirucci*,
   46 N.Y.2d 862 (1979) (per curiam) ........................................................... 14

*George Campbell Painting v. National Union Fire Ins. Co. of Pittsburgh, PA*,
   92 A.D.3d 104 (1st Dep't 2012) .................................................................. 14

*Hartford Underwriting Ins. Co. v. Greenman-Pederson, Inc.*,
   111 A.D.3d 562 (1st Dep't 2013) ................................................................ 14

*IBM v. Liberty Mut. Fire Ins. Co.*,
   303 F.3d 419 (2d Cir. 2002) ................................................................. 7, 11

*In the Matter of Marjorie Karp*,
   145 A.D.2d 208 (1st Dep't 1989) ............................................................... 17

*Markevics v. Liberty Mut. Ins. Co.*,
   97 N.Y.2d 646 (2001) ........................................................................... 14

*National Union Fire Ins. Co. of Pittsburgh, PA v. Greenwich Ins. Co.*,
   103 A.D.3d 473 (1st Dep't 2013) ............................................................... 18

*Netherlands Ins. Co. v. Selective Ins. Co. of Am.*,
   No. 14 Civ. 7132 (KPF), 2016 U.S. Dist. LEXIS 26980 (S.D.N.Y. Mar. 3, 2016) ......... 7, 9, 18

*New York Univ. v. Royal Ins. Co.*,
   200 A.D.2d 527 (1st Dep't 1994) ............................................................... 17

*Pecker Iron Works of N.Y., Inc. v. Travelers Ins. Co.*,
99 N.Y.2d 391 (2003) .................................................................................... 8

*Regal Constr. Corp. v. Nat'l Union Fire Ins. Co.*,
15 N.Y.3d 34 (2010) ..................................................................................... 13

*Ruder & Finn Inc. v. Seaboard Sur. Co.*,
52 N.Y.2d 663 (1981) ...................................................................................... 7

*Schwamb v. Fireman's Ins. Co.*,
41 N.Y.2d 947 (1977) ...................................................................................... 7

*Schwartz v. Chan*,
142 F. Supp. 2d 325 (E.D.N.Y. 2001) ........................................................... 17

*Servidone Constr. Corp. v. Security Ins. Co.*,
64 N.Y.2d 419 (1985) ...................................................................................... 8

*Sirius Am. Ins. Co. v. Vigo Constr. Corp.*,
48 A.D.3d 450 (2d Dep't 2008) ..................................................................... 15

*Tatum v. City of N.Y.*,
06-cv-4290, 2010 U.S. Dist. LEXIS 7748 (S.D.N.Y. Jan. 28, 2010) ....................................... 17

*Technicon Elecs. Corp. v. American Home Assur. Co.*,
74 N.Y.2d 66 (1989) ........................................................................................ 7

*Underwriters at Lloyd's of London v. 150 Nassau St. Billiards, Inc.*,
No. 03 Civ. 1420 (JGK), 2003 U.S. Dist. LEXIS 23028 (S.D.N.Y. Dec. 18, 2003) ................. 8

*W & W Glass Sys., Inc. v. Admiral Ins. Co.*,
91 A.D.3d 530 (1st Dep't 2012) ...................................................................... 6

*WDF Inc. v. Harleysville Ins. Co. of N.Y.*,
193 A.D.3d 667 (1st Dep't 2021) ................................................................... 13

*West 16th St. Tenants Corp. v. Public Serv. Mut. Ins. Co.*,
290 A.D.2d 278 (1st Dep't 2002) ................................................................... 15

*Worcester Ins. Co. v. Bettenhauser*,
95 N.Y.2d 185 (2000) .................................................................................... 14

**Statutes**

N.Y. Ins. Law § 3420 ............................................................................... 14, 15

**Rules**

Federal Rule of Civil Procedure 56 ................................................................ 1

Rule 56.1 of the Local Rules of the Southern and Eastern Districts of New York ........................ 2

Plaintiff the City of New York ("City") respectfully submits this memorandum of law in support of its motion under Federal Rule of Civil Procedure 56 for summary judgment on its third and fourth causes of action.[1] The City seeks a declaration that Defendant Harleysville Insurance Company ("Harleysville") has a duty to defend the City in a personal-injury action and must reimburse the City's past defense costs and attorneys' fees.

## PRELIMINARY STATEMENT

Harleysville is obligated to provide the City with a defense to the underlying tort action because the allegations of the underlying complaint, plus facts actually known to Harleysville, suggest a reasonable possibility of insurance coverage. The complaint in the underlying action alleges that the plaintiff was struck by a loose construction fence and gate at a time when Harleysville's named insured, Prestige Pavers of NYC Inc. ("Prestige") was responsible for maintaining the construction site, including the fence. These allegations suggest a reasonable possibility of coverage under Harleysville's policy and require it to defend the City in the underlying action.

In April 2022, the City tendered the defense of the underlying action to Harleysville. Harleysville disclaimed its defense obligation on the ground that the policy does not require Harleysville to defend the City for the City's sole, independent negligence; that the matter was not adjudicated; and that Prestige was not a named defendant in the underlying action. Harleysville's disclaimer letter failed to acknowledge Prestige's contractual responsibility to maintain the construction site and ignored the fact that an insurer is obligated to provide a defense when there is a *reasonable possibility*—not "adjudication"—of insurance coverage.

---

[1] As the City has previously advised the Court, the City anticipates dismissing its first and second causes of action related to another underlying tort action. (ECF No. 25.)

Prestige's absence as a defendant in the underlying action has no bearing on the City's coverage given Prestige's contractual responsibility for site maintenance, a fact known to Harleysville.

The legal flaws in Harleysville's disclaimer—including a second, untimely attempt to disclaim on additional grounds—require a declaration that Harleysville must defend the City in the underlying action and reimburse the City for all the City's costs and attorneys' fees incurred in defending the case since the City's April 2022 tender of defense.

## UNDISPUTED FACTS[2]

### I.  THE INSURANCE POLICY

Prestige Pavers of NYC Inc. ("Prestige") entered into a contract with the City, acting through the New York City Department of Parks and Recreation, for the reconstruction of the Second Avenue entrance path and miscellaneous site work in Poor Richard's Playground, located at East 109th Street between Second and Third Avenues in Manhattan (the "Playground"). R. 56.1 St. ¶ 1.

Prestige procured a commercial general liability (CGL) policy from Harleysville bearing policy number MPA00000051797T for the policy period June 1, 2019 to June 1, 2020 (the "Policy"). R. 56.1 St. ¶ 2. Prestige is a named insured under the Policy. R. 56.1 St. ¶ 3. Under the Policy, Harleysville acknowledged the breadth of its duty to defend its insured:

> a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" . . . to which this insurance applies. ***We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false, or fraudulent.***
>
> . . . .
>
> b.  This insurance applies to "bodily injury" . . . if:

---

[2] These Undisputed Facts are set forth in Plaintiff's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 ("R. 56.1 St.") and are reproduced here for convenience.

> **(1)** The "bodily injury" . . . is caused by an "occurrence" that takes place in the coverage territory;
>
> **(2)** The "bodily injury" . . . occurs during the policy period;
> . . . .

R 56.1 St. ¶ 4 (emphasis added).

The Policy also contains Endorsement Form ISO CG 20 26 07 04, 2004 edition, which is entitled, "ADDITIONAL INSURED — DESIGNATED PERSON OR ORGANIZATION" ("AI Endorsement"). R. 56.1 St. ¶ 5. The AI Endorsement's Schedule identifies the City of New York as an additional insured. R. 56.1 St. ¶ 6. The AI Endorsement amends the Policy's definition of "insured" to include the City as an additional insured. Specifically, the AI Endorsement provides:

> **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury," "property damage," or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:
>
> **A.** In the performance of your ongoing operations; or
>
> **B.** In connection with your premises owned by or rented to you.

R. 56.1 St. ¶ 7.

## II. THE UNDERLYING ACTION AND HARLEYSVILLE'S REFUSAL TO DEFEND THE CITY

On October 18, 2019, M.M., a minor child, was allegedly injured when she was struck by a gate that detached from the surrounding fence in the Playground. R. 56.1 St. ¶ 8. On February 19, 2020, M.M., by her mother and natural guardian Belisa Calderon ("Calderon"), filed an action in New York State Supreme Court, New York County, captioned *M.M. ex rel. Belisa Calderon and Belisa Calderon v. The City of New York, New York City Department of Education, and New York City Board of Education*, Index No. 151852/2020 (the "*Calderon* Action"). R. 56.1 St. ¶ 9.

The complaint in the *Calderon* Action names the City, the New York City Department of Education, and the New York City Board of Education as defendants and alleges that, on October 18, 2019, the City and its agents owned, operated, managed, maintained, controlled, supervised, and had a duty to maintain the Playground in a safe condition and in good repair, including a certain gate located within the courtyard; that M.M. was lawfully within the confines of the Playground when a certain gate located within the courtyard was caused to fall upon M.M., injuring her; and that the incident was caused by the negligence and carelessness of the City and its agents, servants, and/or employees in their ownership, operation, management, maintenance, design and/or control of the gate in the courtyard, including allowing the gate to become loose from the adjoining bracket. R. 56.1 St. ¶¶ 10, 11.

On April 8, 2022, the New York City Law Department ("Law Department"), on behalf of the City, tendered the defense of the *Calderon* Action by notifying Harleysville of the City's receipt of the *Calderon* Complaint, forwarding a copy of it, and demanding a defense under the Policy. R. 56.1 St. ¶ 12. As part of the Calderon Tender, the Law Department also sent to Harleysville the indemnification, insurance, and signature pages from the City's contract with Harleysville's insured, Prestige; the applicable certificate of liability insurance; and the advice of award of the contract to Prestige. R. 56.1 St. ¶ 13. The "advice of award" documents give the "service location" for Prestige's work as "Poor Richard's Playground, Manhattan." R. 56.1 St. ¶ 13.

On April 12, 2022, a Harleysville claim specialist requested the City's contract with Prestige, the notice of claim, and the 50-h hearing transcript. R. 56.1 St. ¶ 14. The same day, the Law Department sent to Harleysville the City's contract with Prestige; the notice of claim; an exhibit from the 50-h hearing transcript showing the fence and gate that allegedly fell; the

verified bill of particulars; and documentation from the New York City Department of Parks and Recreation ("Parks Documents").  R. 56.1 St. ¶ 15.  The Parks Documents include a "Substantial Completion Inspection Report" addressed to Prestige for work in the Playground that states "A copy of the 'Final Punch List' is attached to this report.  You are directed to complete all of the items on the 'Final Punch List' no later than October 11, 2019."  R. 56.1 St. ¶ 16.  Included on the "Final Punch List" are construction items "Construction fence will stay in place until further notice" and "Install gate stops for all steel hoop fence gates" and administrative items "Submit the certification for chain link fence" and "Chain Link Fence, Obtain a Certification from the supplier and submit it to [Parks] as described in the Contract Document."  R. 56.1 St. ¶ 16.  The Harleysville claim specialist acknowledged receipt of the Law Department's email containing the documents.  R. 56.1 St. ¶ 17.

### III.  HARLEYSVILLE'S IMPROPER AND UNTIMELY DISCLAIMERS AS TO THE UNDERLYING ACTION

By letter dated April 25, 2022, Harleysville responded to the Law Department's demands for a defense of the City under the Policy.  R. 56.1 St. ¶ 18.  In its April 25, 2022 letter, Harleysville refused to assume the defense of the underlying *Calderon* action on the grounds that (1) "[t]he contract does not contain language that requires our insured to defend and indemnify the City for their sole independent negligence," (2) "this matter has not yet been adjudicated," and (3) "plaintiff has not asserted any direct allegations against Prestige Pavers of NYC Inc. in this lawsuit."  R. 56.1 St. ¶ 19.

By email dated May 2, 2022, the Law Department, on behalf of the City, rejected Harleysville's disclaimer as ineffective according to the terms of the Policy and New York law.  R. 56.1 St. ¶ 20.  In rejecting the disclaimer, the City reiterated that the Prestige contract required the City to be an additional insured on the Prestige policy; that the City was demanding defense

coverage only at this time; and that the duty to defend is broader than the duty to indemnify and was triggered by the allegations in the *Calderon* complaint. R. 56.1 St. ¶ 21. The City informed Harleysville that "[o]ur investigation indicates that the gate in question that fell on plaintiff has been installed by your insured, [Prestige]. In order for an insurer to be obligated to defend an insured, the underlying tort suit need only *allege* action that is *potentially* covered by the policy, no matter how attenuated, frivolous, or illogical that allegation may be. That is the case here." R. 56.1 St. ¶ 21.

By letter dated May 11, 2022, Harleysville replied, purporting to disclaim the City's request for a defense on additional grounds. R. 56.1 St. ¶ 22. In this letter, Harleysville quoted the AI Endorsement and stated, "The City would not qualify as an additional insured under [Prestige's] policy at this time. Additional insured status would apply only with respect to liability caused in whole or in part by our insured's acts or omissions. Based on our investigation to date, there is no evidence that our insured caused in whole or in part the incident for which coverage is being sought." R. 56.1 St. ¶ 22. Harleysville also repeated its position that it had no duty to defend the City as "plaintiff has not asserted any direct allegations against Prestige." R. 56.1 St. ¶ 22.

## ARGUMENT

## I.   HARLEYSVILLE HAS A DUTY TO DEFEND THE CITY IN THE *CALDERON* ACTION.

### A.   The Scope of the Duty to Defend is Exceedingly Broad.

Under New York law, the duty of an insurer to assume the defense of its insured under a general liability policy is "exceedingly broad." *W & W Glass Sys., Inc. v. Admiral Ins. Co.*, 91 A.D.3d 530, 531 (1st Dep't 2012) (quoting *BP Air Conditioning Corp. v. One Beacon Ins. Group*, 8 N.Y.3d 708, 714 (2007)). "The duty of an insurer to defend its insured arises whenever

the allegations within the four corners of the underlying complaint potentially give rise to a covered claim, or where the insurer 'has actual knowledge of facts establishing a reasonable possibility of coverage.'" *Frontier Insulation Contrs. v. Merchants Mut. Ins. Co.*, 91 N.Y.2d 169, 175 (1997) (citation omitted); *see Fitzpatrick v. American Honda Motor Co.*, 78 N.Y.2d 61, 65–67 (1991) ("This Court has repeatedly held that an insurer's duty to defend its insured arises whenever the allegations in a complaint state a cause of action that gives rise to the reasonable possibility of recovery under the policy."); *see also Netherlands Ins. Co. v. Selective Ins. Co. of Am.*, No. 14 Civ. 7132 (KPF), 2016 U.S. Dist. LEXIS 26980, at *16 (S.D.N.Y. Mar. 3, 2016) ("duty to defend is triggered by 'poorly or incompletely pleaded [complaints] as well as those artfully drafted'") (quoting *Ruder & Finn Inc. v. Seaboard Sur. Co.*, 52 N.Y.2d 663, 670 (1981)). "[E]ven where claims are 'predicated on a debatable or even untenable theory,' there is a duty to defend if they may reasonably be found to fall within the terms of the policy, whether nor the insured ultimately is responsible for damages." *Century 21, Inc. v. Diamond State Ins. Co.*, 442 F.3d 79, 82 (2d Cir. 2006) (quoting *Schwamb v. Fireman's Ins. Co.*, 41 N.Y.2d 947, 949 (1977)).

"Determining whether an insurer has a duty to defend requires an examination of the policy language and the allegations of the complaint to see if the underlying complaint alleges any facts or grounds which bring the action within the protection purchased." *IBM v. Liberty Mut. Fire Ins. Co.*, 303 F.3d 419, 424 (2d Cir. 2002) (citation omitted). If the facts or allegations contained in the complaint "bring the claim **even potentially** within the protection purchased," the insurer has a duty to defend the insured. *Technicon Elecs. Corp. v. American Home Assur. Co.*, 74 N.Y.2d 66, 73 (1989) (emphasis added). "If, liberally construed, the claim is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be." *Automobile Ins. Co. of Hartford v. Cook*, 7

N.Y.3d 131, 137 (2006) (citation omitted); *see Underwriters at Lloyd's of London v. 150 Nassau St. Billiards, Inc.*, No. 03 Civ. 1420 (JGK), 2003 U.S. Dist. LEXIS 23028, at *14–15 (S.D.N.Y. Dec. 18, 2003) ("The duty to defend exists unless each and every claim asserted by the underlying complaints is either unambiguously not covered or unambiguously excluded from coverage.") (brackets and internal quotation marks omitted).

The insurer bears a "heavy burden" when trying to circumvent or be relieved of its duty to defend. *Frontier Insulation*, 91 N.Y.2d at 175; *see Fitzpatrick*, 78 N.Y.2d at 66. The insurer is not permitted to rely upon facts that it learns outside "the four corners of the complaint" in order to deny coverage. *Fitzpatrick*, 78 N.Y.2d at 63; *see Colon v. Aetna Life & Cas. Ins. Co.*, 66 N.Y.2d 6, 10 (1985) (criticizing insurer's reliance on its own investigation in refusing to defend insured).

In short, "[t]he insured's right to representation and the insurer's correlative duty to defend suits, however groundless, false or fraudulent, are in a sense 'litigation insurance' expressly provided by the insurance contract." *Servidone Constr. Corp. v. Security Ins. Co.*, 64 N.Y.2d 419, 423–24 (1985) (citation omitted). "If the claims asserted, though frivolous, are within policy coverage, the insurer must defend irrespective of ultimate liability." *Id.* at 424.

**B.      The City Is an Additional Insured Under the Policy and Is Entitled to a Defense in the Underlying *Calderon* Action.**

The City is unquestionably an additional insured under the Policy, and as an additional insured, is owed the same "litigation insurance" protection as the named insured, Prestige. *See Pecker Iron Works of N.Y., Inc. v. Travelers Ins. Co.*, 99 N.Y.2d 391, 393 (2003) ("'Additional insured' is a recognized term in insurance contracts, . . . the well-understood meaning of [which] is 'an entity enjoying the same protection as the named insured.'") (quoting *Del Bellow v. General Acc. Ins. Co.*, 185 A.D.2d 691, 692 (4th Dep't 1992)) (internal quotation marks

omitted)). The AI Endorsement explicitly extends to "The City of New York" the Policy's protection for claims for "liability for 'bodily injury' . . . caused, in whole or in part, by [Prestige's] acts or omissions or the acts or omissions of those acting on [Prestige's] behalf . . . [i]n the performance of [Prestige's] ongoing operations . . . ." R. 56.1 St. ¶¶ 6–7.

As the Policy extends additional-insurance coverage to the City for any injuries caused by Prestige's work under its contract with the City, Harleysville's duty to defend the City is triggered whenever there is a "reasonable possibility," *Fitzpatrick*, 78 N.Y.2d at 65, that a lawsuit against the City stems from such injuries. *See also Netherlands Ins. Co.*, 2016 U.S. Dist. LEXIS 26980, at *16–17 & n.6 (allegation that additional insureds and their contractors "created a slippery work environment, which caused [plaintiff] to fall" . . . "creates a duty to defend" against liability for bodily injury caused by subcontractor's ongoing operations). Here, the *Calderon* complaint alleges bodily injury to the tort plaintiff caused by the acts or omissions of the City *or those acting on its behalf in the performance of their ongoing operations*, i.e., Prestige, and therefore falls within the Policy's coverage.

Specifically, the *Calderon* complaint alleges that alleges that, on October 18, 2019, the City *and its agents* owned, operated, managed, maintained, controlled, supervised, and had a duty to maintain the Playground in a safe condition and in good repair, including a certain gate located within the courtyard; M.M. was lawfully within the confines of the Playground when a certain gate located within the courtyard was caused to fall upon M.M., injuring her; and the incident was caused by the negligence of the City *and its agents*, servants, and/or employees in their ownership, operation, management, maintenance, design and/or control of the gate in the courtyard, including allowing the gate to become loose from the adjoining bracket. R. 56.1 St. ¶¶ 10, 11. These allegations are within the coverage of the Policy because they allege the

reasonable possibility of bodily injuries caused by the acts or omissions of the City's agents, i.e., Prestige.

Moreover, Harleysville had actual knowledge of facts establishing a reasonable possibility of coverage. *Frontier Insulation*, 91 N.Y.2d at 175. The Court of Appeals' decision in *Fitzpatrick* illustrates how this applies here. In *Fitzpatrick*, the underlying complaint "on its face did not state a covered claim" under the insurance policy. 78 N.Y.2d at 69. Nonetheless, through correspondence with the additional insured, the insurer became aware of "underlying facts" that established a potentially "covered event," triggering the duty to defend. *Id.* The Court of Appeals continued:

> [T]he duty to defend derives, in the first instance, not from the [underlying] complaint drafted by a third party, but rather from the insurer's own contract with the insured. While the allegations in the [underlying] complaint may provide the significant and usual touchstone for determining whether the insurer is contractually bound to provide a defense, the contract itself must always remain a primary point of reference. . . . This is particularly so because the drafter of the [underlying] pleading may be unaware of the true underlying facts or the nuances that may affect the defendant's coverage and it might not be in the insured's (or the insurer's) interest to reveal them.
>
> \*      \*      \*
>
> Indeed, relieving the insurer of its duty to defend is particularly imprudent and counterproductive where, as here, the inaccuracies in the plaintiff's pleadings are likely to become apparent when the true facts are developed on the record and the role of the insured in the incident is fully exposed. At that point, the trial court could well grant a request by the plaintiff to conform the pleadings to the proof, in which event the insurer's core policy obligation to defend . . . would unquestionably be triggered. [The insured] should not be required to wait until that point is reached before obtaining an insurance-company sponsored defense, since a provision for defense of suits is useless and meaningless unless it is offered when the suit arises.

*Id.* at 68–70 (internal quotation marks, citations, and footnotes omitted); *see also City of New York v. Wausau Underwriters Ins. Co.*, 145 A.D.3d 614, 617–19 (1st Dep't 2016) (holding, in two declaratory judgment actions, that the "facial allegations" of the underlying complaints did not suggest a reasonable possibility of coverage, but that the duty to defend was nonetheless triggered due to extrinsic evidence). Applying *Fitzpatrick* here, the duty to defend was triggered because Harleysville had "actual knowledge" of Prestige's role in the *Calderon* incident. R. 56.1 St. ¶¶ 12–16 (communications from the City to Harleysville, all noting Prestige's potential role, including punch list showing Prestige's need to maintain construction fences). Nothing more was required.

### C. The Bases for Harleysville's April 25, 2022 Disclaimer of Coverage Are Entirely Without Merit.

Despite the clear applicability of the additional-insured endorsement, Harleysville refused the Law Department's tender. Harleysville purported to disclaim on three bases:

> [1] The contract does not contain language that requires our insured to defend and indemnify the City for their sole independent negligence. [2] In addition, this matter has not yet been adjudicated. Therefore, we are unable to accept the tender for defense or indemnification on a contractual basis at this time. [3] In addition, plaintiff has not asserted any direct allegations against Prestige Pavers of NYC Inc. in this lawsuit. Therefore, a duty to defend has not been triggered in this case.

R. 56.1 St. ¶ 19. Each of these bases fails as a matter of law.

First, the question is not whether the *contract* requires *Prestige* to defend the City; the question is whether the *Policy* requires *Harleysville* to defend the City as an additional insured. *IBM*, 303 F.3d at 424; *Cook*, 7 N.Y.3d at 137. As discussed above, the plain language of the Policy requires Harleysville to defend the City as an additional insured, even in groundless complaints. R. 56.1 St. ¶ 4. Moreover, the "four corners" of the *Calderon* complaint do not

allege that the City was solely and independently negligent: the complaint specifically alleges that the City *and its agents*, servants and/or employees were negligent. R. 56.1 St. ¶ 11.

Second, the absence of a finding of liability in underlying tort action is beyond irrelevant. The New York Court of Appeals has made clear that the insurer's duty to defend is not contingent on liability:

> We are asked to decide within the context of a comprehensive general liability (CGL) insurance policy whether liability must be determined before an additional named insured is entitled to a defense in an underlying personal injury action. We conclude that additional insured coverage is not contingent upon a liability finding and that the obligation of an insurer to provide a defense to an additional named insured under the policy exists to the same extent as it does to a named insured.

*BP Air Conditioning*, 8 N.Y.3d at 711. "Thus, the standard for determining whether an additional insured is entitled to a defense is the same as that which is used to determine if a named insured is entitled to a defense." *Id.* at 715. As in *BP Air Conditioning*, the City's "reasonable expectation" was that being named as an additional insured on the insurance policy would provide it with "protection from lawsuits arising out of [the named insured's] work — litigation insurance." *Id.* at 716. To deny the City a defense in the underlying action would effectively "rewrite the [P]olicy without regard to [the City's] reasonable expectations as expressed in the [contract], and provide a windfall for [the insurer]." *Id.* Like the insurer in *BP Air Conditioning*, Harleysville is obligated to provide its additional insured a defense in the underlying action based on the allegations within the four corners of those complaints, "regardless of the merits of the claim[s]." *See id.*

Third, it also irrelevant that Prestige is not itself a named defendant in the *Calderon* action. Harleysville's duty to defend the City is triggered "whenever the allegations within the four corners of the underlying complaint potentially give rise to a covered claim, or where the

insurer 'has actual knowledge of facts establishing a reasonable possibility of coverage,'" both of which are established here. *Frontier Insulation*, 91 N.Y.2d at 175; *see also Regal Constr. Corp. v. Nat'l Union Fire Ins. Co.*, 15 N.Y.3d 34, 39 (2010) (insurer had duty to defend additional insured, even though named insured not a named defendant and complaint alleged no negligence on part of named insured, where "there was a connection between the accident and [named insured's] work"); *WDF Inc. v. Harleysville Ins. Co. of N.Y.*, 193 A.D.3d 667, 667 (1st Dep't 2021) ("Harleysville had a duty to defend [additional insured] even though the underlying personal injury complaint contained no allegations that [named insured] was negligent, because Harleysville had actual knowledge of facts establishing a reasonable possibility of coverage."). As discussed above, both the four corners of the complaint, and Harleysville's actual knowledge, trigger Harleysville's duty to defend the City; whether Prestige is named as a defendant is irrelevant.

### D. Harleysville Waived Any Other Possible Bases for Denying Coverage, Including Those Bases in its Untimely May 11, 2022 Disclaimer.

By failing to raise certain defenses in a timely disclaimer, Harleysville has waived all defenses omitted from its April 25, 2022 disclaimer that it has only belatedly asserted in its May 11, 2022 disclaimer. A carrier's failure to raise a defense in its disclaimer bars the carrier from asserting that defense later:

> Although an insurer may disclaim coverage for a valid reason (Insurance Law, § 167, subd 8) the notice of disclaimer must promptly apprise the claimant with a high degree of specificity of the ground or grounds on which the disclaimer is predicated. Absent such specific notice, a claimant might have difficulty assessing whether the insurer will be able to disclaim successfully. This uncertainty could prejudice the claimant's ability to ultimately obtain recovery. In addition, the insurer's responsibility to furnish notice of the specific ground on which the disclaimer is based is not unduly burdensome, the insurer being highly experienced and sophisticated in such matters.

*Gen. Accident Ins. Grp. v. Cirucci*, 46 N.Y.2d 862, 864 (1979) (per curiam); *see also Hartford Underwriting Ins. Co. v. Greenman-Pederson, Inc.*, 111 A.D.3d 562, 563 (1st Dep't 2013) ("[T]he notice of disclaimer must promptly apprise the claimant with a high degree of specificity of the ground or grounds on which the disclaimer is predicated, and any ground known to the insurer but not then asserted is waived."); *City of New York v. Harleysville Ins. Co.*, No. 22-cv-3306, 2022 U.S. Dist. LEXIS 143039, at *2 (S.D.N.Y. Aug. 10, 2022) (ECF No. 24) (noting without deciding that record in this case "seems to suggest" Harleysville waived defense not proffered in either disclaimer). Here, Harleysville has waived any defense not asserted in its April 25, 2022 disclaimer, especially any defense raised for the first time in this action.

Harleysville's May 11, 2022 was untimely as a matter of law. New York law requires an insurer to disclaim coverage for a bodily injury claim "as soon as reasonably possible." N.Y. Ins. Law § 3420(d)(2); *George Campbell Painting v. National Union Fire Ins. Co. of Pittsburgh, PA*, 92 A.D.3d 104, 105 (1st Dep't 2012). An insurer's failure to timely disclaim waives most coverage defenses, including reliance on policy exclusions. "[A] timely disclaimer pursuant to Insurance Law § 3420(d) is required when a claim falls within the coverage terms but is denied based on a policy exclusion." *City of New York v. St. Paul Fire & Marine Ins. Co.*, 21 A.D.3d 978, 980 (2d Dep't 2005) (quoting *Markevics v. Liberty Mut. Ins. Co.*, 97 N.Y.2d 646, 648-49 (2001)). "An insurer's failure to comply with Insurance Law § 3420(d) precludes it from denying coverage based upon a policy exclusion." *Id.* at 980–81 (citing *Worcester Ins. Co. v. Bettenhauser*, 95 N.Y.2d 185, 188–89 (2000)). An insurer's failure to timely disclaim "precludes effective disclaimer" even where "the policyholder's own notice of the incident to its insurer is untimely." *First Fin. Ins. Co. v. Jetco Contracting Corp.*, 1 N.Y.3d 64, 70 (2003).

An insurer's delay of even 30 days in disclaiming has been held unreasonable as a matter of law, and has served to waive otherwise valid defenses to coverage. *See, e.g.*, *West 16th St. Tenants Corp. v. Public Serv. Mut. Ins. Co.*, 290 A.D.2d 278, 279 (1st Dep't 2002) (30-day delay unreasonable as a matter of law for disclaimer, and waived defense of insured's late notice); *Sirius Am. Ins. Co. v. Vigo Constr. Corp.*, 48 A.D.3d 450, 452 (2d Dep't 2008) (34-day delay unreasonable); *Bovis Lend Lease LMB, Inc. v. Royal Surplus Lines Ins. Co.*, 44 A.D.3d 307, 307 (1st Dep't 2007) (37 days unreasonable); *2833 Third Ave. Realty Assocs. v. Marcus*, 12 A.D.3d 329, 329 (1st Dep't 2004) (37 days unreasonable); *Campos v. Sarro*, 309 A.D.2d 888, 889 (2d Dep't 2003) (39 days unreasonable). "The timeliness of an insurer's disclaimer is measured from the point in time when the insurer first learns of the grounds for disclaimer of liability or denial of coverage." *Allcity Ins. Co. v. Jimenez*, 78 N.Y.2d 1054, 1056 (1991). Moreover, "an insurer's explanation is insufficient as a matter of law where the basis for denying coverage was or should have been readily apparent before the onset of the delay." *Jetco Contracting Co.*, 1 N.Y.3d at 69; *see Endurance Am. Specialty Ins. Co. v. Utica First Ins. Co.*, 132 A.D.3d 434, 436 (1st Dep't 2015) ("Insurance Law § 3240(d) precludes an insurer from delaying issuance of a disclaimer on a ground that the insurer knows to be valid while investigating other possible grounds for disclaiming.") (ellipsis and internal quotation marks omitted).

Here, the City tendered its defense of the *Calderon* action to Harleysville on April 8, 2022. R. 56.1 St. ¶ 12. Harleysville's second disclaimer letter was sent 33 days later, on May 11, 2022, R. 56.1 St. ¶ 22, well within the time periods that courts have found unreasonable. These additional purported bases should also have been "readily apparent" to Harleysville before the delay, making their late invocation unreasonable as a matter of law. *Jetco Contracting Co.*, 1 N.Y.3d at 69; *see also Harleysville*, 2022 U.S. Dist. LEXIS 143039, at *2 (ECF No. 24) (pretrial

decision in this case noting that, at time of first disclaimer, "Harleysville has already made its assessments based on documents and information it has already obtained").

Even if the Court were to consider this untimely disclaimer, it is woefully insufficient. In this disclaimer, Harleysville first cites the AI Endorsement and then states:

> [1] The City would not qualify as an additional insured under Prestige Pavers of NYC's policy at this time. Additional insured status would only apply with respect to liability caused in whole or in part by our insured's acts or omissions. *Based on our investigation to date*, there is no evidence that our insured caused in whole or in part the incident for which coverage is being sought. [2] In addition, plaintiff has not asserted any direct allegations against Prestige Pavers of NYC Inc. in this lawsuit. Therefore, a duty to defend has not been triggered in this case.

R. 56.1 St. ¶ 22 (emphasis added). First, as discussed above, however, the question is not what *evidence* an insurer's investigation reveals; instead, the insurer must provide a defense whenever the four corners of the underlying complaint **potentially** give rise to a covered claim, or where the insurer has actual knowledge of facts establishing a reasonable possibility of coverage. *Frontier Insulation*, 91 N.Y.2d at 175. That burden is easily satisfied. More to the point, Harleysville's "investigation" is meaningless: the facts to be considered in assessing the duty to defend are set forth in the underlying complaint, and an insurer may not rely on whatever extrinsic facts that its likely self-serving investigation conjures up. *Colon*, 66 N.Y.2d at 10. Second, Harleysville's repetitive argument that Prestige was not named in the underlying tort suit fares no better the second time around; as discussed above, this is irrelevant. There is no valid basis for Harleysville to disclaim coverage of the City in the *Calderon* action.

## II. THE CITY IS ENTITLED TO RECOVER THE COSTS AND FEES IT HAS INCURRED DEFENDING ITSELF IN THE UNDERLYING ACTION.

The City is entitled to recoup its costs and fees incurred in defending itself in the *Calderon* Action from the date the City first notified Harleysville of the claim to the date that

Harleysville assumes the City's defense. *New York Univ. v. Royal Ins. Co.*, 200 A.D.2d 527, 528–29 (1st Dep't 1994); *ACP Servs. Corp. v. St. Paul Fire & Marine Ins. Co.*, 224 A.D.2d 961, 963 (4th Dep't 1996). When an insurance carrier wrongfully refuses to acknowledge its defense obligations, the Law Department charges $350 an hour for attorney time and $100 an hour for paralegal time. R. 56.1 St. ¶ 23. New York courts have found these rates reasonable. *See, e.g.*, *City of New York v. Venkataram*, 06-cv-6578, 2012 U.S. Dist. LEXIS 99814, at *7–8 n.2 (S.D.N.Y. July 17, 2012) ($350 an hour for Affirmative Litigation senior attorney and $250 an hour for more junior attorney); *Abeyta v. City of N.Y.*, 12-cv-5623, 2014 U.S. Dist. LEXIS 33766, at *8–11 (S.D.N.Y. Mar. 7, 2014) (blended rate of $300 an hour for Special Federal Litigation attorneys); *Adams v. N.Y. State Educ. Dep't*, 630 F. Supp. 2d 333, 347–50 (S.D.N.Y. 2009) ($350 an hour for experienced Labor and Employment division attorney); *E.F. v N.Y.C. Dep't of Educ.*, 11-cv-5243, 2012 U.S. Dist. LEXIS 162810, at *18 (S.D.N.Y. Nov. 8, 2012) ($150 an hour for chief paralegal and $125 an hour for other paralegals); *Tatum v. City of N.Y.*, 06-cv-4290, 2010 U.S. Dist. LEXIS 7748, at *18–20 (S.D.N.Y. Jan. 28, 2010) ($125 per hour of paralegal time is typical).

Finally, a hearing is not required to determine attorney's fees, which the Court can award based on documentary submissions. *See Schwartz v. Chan*, 142 F. Supp. 2d 325, 331 (E.D.N.Y. 2001) (citing *In the Matter of Marjorie Karp*, 145 A.D.2d 208, 216 (1st Dep't 1989)); *accord Employers Ins. Co. v. General Star Nat'l Ins. Co.*, No. 03 Civ. 6575 (DLC), 2004 U.S. Dist. LEXIS 12904, at *14–15 (S.D.N.Y. July 9, 2004) (rejecting primary insurer's request for hearing on fees' reasonableness and propriety, and awarding excess insurer fees and costs for defense of underlying action). At that time, the City expects to submit a computation of the prejudgment interest it is entitled to due to Harleysville's wrongful failure to defend. *See, e.g.*, *National*

*Union Fire Ins. Co. of Pittsburgh, PA v. Greenwich Ins. Co.*, 103 A.D.3d 473, 474 (1st Dep't 2013) (where insurer breached duty to defend, insured was entitled to interest from date it incurred each legal expense); *Netherlands Ins. Co.*, 2016 U.S. Dist. LEXIS 26980, at *22 (same).

## CONCLUSION

The City respectfully requests that the Court grant the City's motion for summary judgment on its third and fourth causes of action against Harleysville. This Court should declare that Harleysville must defend the City in the *Calderon* Action and must reimburse the City for the costs it has incurred defending itself since it tendered the defense of that action.

Dated: November 9, 2022
New York, New York

> HON. SYLVIA O. HINDS-RADIX
> *Corporation Counsel of the City of New York*
> Attorney for Plaintiff
>
> By: _____
> Daniel R. Whitman
> Assistant Corporation Counsel
> 100 Church Street, 20th Floor
> New York, NY 10007
> (212) 356-2283
> dwhitman@law.nyc.gov