UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x

THE CITY OF NEW YORK,

                       Plaintiff,

          -against-

HARLEYSVILLE INSURANCE COMPANY,

                       Defendant.

-------------------------------------------------------------------------x

No. 22-cv-3306-RA-JLC

# REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

HON. SYLVIA O. HINDS-RADIX
*Corporation Counsel of the City of New York*
Attorney for Plaintiff

By:   Daniel R. Whitman
       Assistant Corporation Counsel
       100 Church Street, 20th Floor
       New York, NY 10007
       (212) 356-2283
       dwhitman@law.nyc.gov

Dated:  December 16, 2022
         New York, New York

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT .......................................................................................................................... 2

    I.   THE ALLEGATIONS IN THE UNDERLYING COMPLAINT, AND HARLEYSVILLE'S ACTUAL KNOWLEDGE, TRIGGER THE DUTY TO DEFEND. ................................................................................................................ 2

        A.  The Scope of the Duty to Defend is Exceedingly Broad, and No Antecedent Finding of Liability Is Required. ...................................................... 2

        B.  The City Is Entitled to a Defense Under the "Additional Insured – Designated Person or Organization" Endorsement............................................ 6

        C.  The City Is Entitled to a Defense Under the "Additional Insured – Owners, Lessees or Contractors – Completed Operations – Automatic Status When Required in Construction Agreement With You" Endorsement..................... 10

    II.  HARLEYSVILLE DOES NOT DISPUTE THAT THE CITY IS ENTITLED TO ATTORNEYS' FEES AND COSTS DEFENDING ITSELF IN THE *CALDERON* ACTION IF HARLEYSVILLE BREACHED ITS DUTY TO DEFEND THE CITY............................................................................................... 12

CONCLUSION....................................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Cases**

*ACP Services Corp. v. St. Paul Fire & Marine Insurance Co.*,
 224 A.D.2d 961 (4th Dep't 1996) .................................................................................................. 12

*Automobile Insurance Co. of Hartford v. Cook*,
 7 N.Y.3d 131 (2006) ................................................................................................................. 3, 11

*BP Air Conditioning Corp. v. One Beacon Insurance Group*,
 8 N.Y.3d 708 (2007) ................................................................................................................... 2, 4

*Burlington Insurance Co. v. New York City Transit Authority*,
 29 N.Y.3d 313 (2017) .................................................................................................................. 4, 5

*Century 21, Inc. v. Diamond State Insurance Co.*,
 442 F.3d 79 (2d Cir. 2006) ............................................................................................................ 2

*City of New York v. Harleysville Insurance Co.*,
 No. 22-cv-3306-RA-JLC, 2022 U.S. Dist. LEXIS 143039 (S.D.N.Y. Aug. 10, 2022) .............. 6

*City of New York v. Liberty Mutual Insurance Co.*,
 No. 15-cv-8220 (AJN), 2017 U.S. Dist. LEXIS 164134 (S.D.N.Y. Sept. 28, 2017) ............... 13

*Del Bellow v. General Accident Insurance Co.*,
 185 A.D.2d 691 (4th Dep't 1992) .................................................................................................. 3

*Fitzpatrick v. American Honda Motor Co.*,
 78 N.Y.2d 61 (1991) ............................................................................................................ 2, 3, 4

*Frontier Insulation Contractors v. Merchants Mutual Insurance Co.*,
 91 N.Y.2d 169 (1997) ............................................................................................................ passim

*General Insurance Co. of America v. City of New York*,
 No. 04-cv-8946 (JCF), 2005 U.S. Dist. LEXIS 35864 (S.D.N.Y. Dec. 23, 2005) ................... 13

*Greenwich Insurance Co. v. City of New York*,
 122 A.D.3d 470 (1st Dep't 2014) .................................................................................................. 6

*Hanover Insurance Co. v. Philadelphia Indemnity Insurance Co.*,
 159 A.D.3d 587 (1st Dep't 2018) .................................................................................................. 5

*IBM v. Liberty Mutural Fire Insurance Co.*,
 303 F.3d 419 (2d Cir. 2002) .......................................................................................................... 3

*Moleon v. Kreisler Borg Florman General Construction Co.*,
 304 A.D.2d 337 (1st Dep't 2003) .................................................................................................. 4

*National Union Fire Insurance Co. of Pittsburgh, PA v. Greenwich Insurance Co.*,
    103 A.D.3d 473 (1st Dep't 2013) .............................................................................. 12

*New York University v. Royal Insurance Co.*,
    200 A.D.2d 527 (1st Dep't 1994) .............................................................................. 12

*Ohio Security Insurance Co. v. Travelers Indemnity Co.*,
    No. 19-cv-1355 (AJN), 2021 U.S. Dist. LEXIS 38292 (S.D.N.Y. Mar. 1, 2021) ....................... 9

*Pecker Iron Works of New York, Inc. v. Travelers Insurance Co.*,
    99 N.Y.2d 391 (2003) ................................................................................................. 3

*Regal Construction Corp. v. National Union Fire Insurance Co.*,
    15 N.Y.3d 34 (2010) ................................................................................................... 9

*Schwamb v. Fireman's Insurance Co.*,
    41 N.Y.2d 947 (1977) ................................................................................................. 2

*Serio v. Pubic Service Mutual Insurance Co.*,
    7 A.D.3d 277 (1st Dep't 2004) .................................................................................. 13

*Sixty Sutton Corp. v. Illinois Union Insurance Co.*,
    34 A.D.3d 386 (1st Dep't 2006) .................................................................................. 3

*Technicon Electronics Corp. v. American Home Assurance Co.*,
    74 N.Y.2d 66 (1989) ................................................................................................... 3

*Tribeca Broadway Assocs., LLC v. Mt. Vernon Fire Insurance Co.*,
    5 A.D. 3d 198 (1st Dep't 2004) .................................................................................. 4

*Underwriters at Lloyd's of London v. 150 Nassau Street Billiards, Inc.*,
    No. 03 Civ. 1420 (JGK), 2003 U.S. Dist. LEXIS 23028 (S.D.N.Y. Dec. 18, 2003) ............ 3, 10

*United States Underwriters Insurance Co. v. Image By J & K, LLC*,
    335 F. Supp. 3d 321 (E.D.N.Y. 2018) ......................................................................... 5

*W & W Glass Systems, Inc. v. Admiral Insurance Co.*,
    91 A.D.3d 530 (1st Dep't 2012) ................................................................................. 2

*WDF Inc. v. Harleysville Insurance Co. of New York*,
    193 A.D.3d 667 (1st Dep't 2021) ............................................................................... 10

**Rules**

Federal Rule of Civil Procedure 56 .................................................................................. 1

Rule 56.1 of the Local Rules of United States District Courts for the Southern and Eastern
    Districts of New York ................................................................................................ 6

Plaintiff the City of New York ("City") respectfully submits this reply memorandum of law in support of its motion under Federal Rule of Civil Procedure 56 for summary judgment on its third and fourth causes of action, and in opposition to Defendant Harleysville Insurance Company ("Harleysville")'s motion for summary judgment on the third and fourth causes of action (ECF Nos. 32–35).

## **PRELIMINARY STATEMENT**

In its consolidated opposition to the City's motion for summary judgment and cross-motion (ECF No. 35), Harleysville raises a series of incorrect legal arguments relying on irrelevant facts in an attempt to evade its duty to defend the City in an underlying tort matter. Harleysville's efforts fall woefully short, however, as there is no question that the allegations of the underlying complaint, plus facts actually known to Harleysville, suggest a reasonable possibility of insurance coverage. The complaint in the underlying action alleges that the plaintiff was struck by a loose fence and gate at a time when Harleysville's named insured, Prestige Pavers of NYC Inc. ("Prestige") was responsible for maintaining the fence and the site where the fence was located. These allegations suggest a reasonable possibility of coverage under Harleysville's policy and require it to defend the City in the underlying action. Still more significant, documents provided to Harleysville with the City's tender show that Prestige's work was ongoing for more than a year following the accident. For these reasons, discussed further herein, the Court should declare that Harleysville must defend the City in the underlying action and reimburse the City for all the City's costs and attorneys' fees incurred in defending the case since the City's April 2022 tender of defense.

**ARGUMENT**

I. **THE ALLEGATIONS IN THE UNDERLYING COMPLAINT, AND HARLEYSVILLE'S ACTUAL KNOWLEDGE, TRIGGER THE DUTY TO DEFEND.**

  A. **The Scope of the Duty to Defend is Exceedingly Broad, and No Antecedent Finding of Liability Is Required.**

Harleysville ignores the wealth of case law cited in the City's moving brief establishing that, under New York law, the duty of an insurer to assume the defense of its insured under a general liability policy is "exceedingly broad." *W & W Glass Sys., Inc. v. Admiral Ins. Co.*, 91 A.D.3d 530, 531 (1st Dep't 2012) (quoting *BP Air Conditioning Corp. v. One Beacon Ins. Group*, 8 N.Y.3d 708, 714 (2007)). "The duty of an insurer to defend its insured arises whenever the allegations within the four corners of the underlying complaint ***potentially*** give rise to a covered claim, or where the insurer 'has actual knowledge of facts establishing a ***reasonable possibility*** of coverage.'" *Frontier Insulation Contrs. v. Merchants Mut. Ins. Co.*, 91 N.Y.2d 169, 175 (1997) (emphases added) (citation omitted); *see Fitzpatrick v. American Honda Motor Co.*, 78 N.Y.2d 61, 65–67 (1991) ("This Court has repeatedly held that an insurer's duty to defend its insured arises whenever the allegations in a complaint state a cause of action that gives rise to the reasonable possibility of recovery under the policy."). "[E]ven where claims are 'predicated on a debatable or even untenable theory,' there is a duty to defend if they may reasonably be found to fall within the terms of the policy, whether nor the insured ultimately is responsible for damages." *Century 21, Inc. v. Diamond State Ins. Co.*, 442 F.3d 79, 82 (2d Cir. 2006) (quoting *Schwamb v. Fireman's Ins. Co.*, 41 N.Y.2d 947, 949 (1977)).

"Determining whether an insurer has a duty to defend requires an examination of the policy language and the allegations of the complaint to see if the underlying complaint alleges any facts or grounds which bring the action within the protection purchased." *IBM v. Liberty Mut. Fire Ins.*

2

*Co.*, 303 F.3d 419, 424 (2d Cir. 2002) (citation omitted).  If the facts or allegations contained in the complaint "bring the claim ***even potentially*** within the protection purchased," the insurer has a duty to defend the insured.  *Technicon Elecs. Corp. v. American Home Assur. Co.*, 74 N.Y.2d 66, 73 (1989) (emphasis added).  "If, liberally construed, the claim is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be."  *Automobile Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (2006) (citation omitted); *see Underwriters at Lloyd's of London v. 150 Nassau St. Billiards, Inc.*, No. 03 Civ. 1420 (JGK), 2003 U.S. Dist. LEXIS 23028, at *14–15 (S.D.N.Y. Dec. 18, 2003) ("The duty to defend exists unless each and every claim asserted by the underlying complaints is either unambiguously not covered or unambiguously excluded from coverage.") (brackets and internal quotation marks omitted).  The insurer bears a "heavy burden" when trying to circumvent or be relieved of its duty to defend.  *Frontier Insulation*, 91 N.Y.2d at 175; *see Fitzpatrick*, 78 N.Y.2d at 66.

Harleysville disingenuously claims that the City is "not entitled to coverage" because it is "not named on the face of the policy" (ECF No. 35 at 7), ignoring the endorsements explicitly naming the City as an additional insured and law providing that additional insureds are entitled to "the same protection as the named insured." *Pecker Iron Works of N.Y., Inc. v. Travelers Ins. Co.*, 99 N.Y.2d 391, 393 (2003) (quoting *Del Bellow v. General Acc. Ins. Co.*, 185 A.D.2d 691, 692 (4th Dep't 1992)).  Harleysville instead cites to irrelevant cases involving coverage being sought by third parties that are neither named insureds nor named additional insureds, *e.g.*, *Sixty Sutton Corp. v. Illinois Union Ins. Co.*, 34 A.D.3d 386 (1st Dep't 2006) (no coverage for third party not a named or additional insured and where exclusion applies); or inaccurately represents the case's holding, *Tribeca Broadway Assocs., LLC v. Mt. Vernon Fire Ins. Co.*, 5 A.D. 3d 198, 200 (1st

3

Dep't 2004) ("a party that is not named an insured *or an additional insured* on the face of the policy is not entitled to coverage") (emphasis added); *Moleon v. Kreisler Borg Florman Gen. Constr. Co.*, 304 A.D.2d 337, 340 (1st Dep't 2003) (same).

Harleysville also erroneously argues that the City must definitively *prove* that the underlying accident was caused by the named insured, and claims that the City has failed to do so because "[t]here has been no finding of liability" and because "no dispositive motions have been made" in the underlying action. (ECF No. 35 at 7.) As discussed *supra*, the question for the Court is whether the allegations in the complaint, or facts known to Harleysville, suggest a reasonable possibility of coverage. *Frontier Insulation*, 91 N.Y.2d at 175; *Fitzpatrick*, 78 N.Y.2d at 65–67. And, as the City set forth in its opening brief, it is black-letter law that the insurer's duty to defend is not contingent on liability:

> We are asked to decide within the context of a comprehensive general liability (CGL) insurance policy whether liability must be determined before an additional named insured is entitled to a defense in an underlying personal injury action. *We conclude that additional insured coverage is not contingent upon a liability finding* and that the obligation of an insurer to provide a defense to an additional named insured under the policy exists to the same extent as it does to a named insured.

*BP Air Conditioning*, 8 N.Y.3d at 711 (emphasis added). "Thus, the standard for determining whether an additional insured is entitled to a defense is the same as that which is used to determine if a named insured is entitled to a defense." *Id.* at 715.

The cases cited by Harleysville do not hold differently. *Burlington Ins. Co. v. N.Y.C. Tr. Auth.*, 29 N.Y.3d 313, 319–20 (2017) (considering liability in underlying action where liability was established, and where insurer first accepted defense with reservation of rights and then subsequently disclaimed); *Hanover Ins. Co. v. Phil. Indem. Ins. Co.*, 159 A.D.3d 587, 587 (1st

4

Dep't 2018) (deciding question of coverage based on allegations in complaint, not finding of liability).

In *United States Underwriters Insurance Co. v. Image By J & K, LLC*, 335 F. Supp. 3d 321 (E.D.N.Y. 2018), the court examined *Burlington*, rejected the very argument that Harleysville makes here, and required an insurer to defend an additional insured under an endorsement provision substantially similar to the one at issue in this case. There, the endorsement extended coverage to an additional insured "with respect to liability for 'bodily injury' . . . caused, in whole or in part, by . . . (1) [the named insured's] acts or omissions or (2) [t]he acts or omissions of those acting on [the named insured's] behalf . . . in the performance of [the named insured's] ongoing operations for the additional insure[s] at the location[s] designated . . . ." *Id.* at 328. The court found the underlying complaint "sufficiently allege[d] that [the named insured janitorial subcontractor's] actions or omissions proximately caused [the underlying plaintiff's] injuries." *Id.* at 331. The underlying personal-injury complaint in *United States Underwriters* alleged that the additional insured, the prime contractor Image, or its agents were negligent "by failing to properly dry the floors, leaving the Premises 'in a defective, dangerous and slippery condition,'" and that the additional insured's "*or its agents'* negligence allegedly 'caused' [the underlying plaintiff] to sustain her bodily injuries." *Id.* (emphasis added). The court concluded that the insurer "may not disclaim Image as an additional insured due to lack of proximate cause based on the allegations in [the tort plaintiff's] complaint." *Id.* Similarly here, M.M. has alleged that the City *or its agents'* negligence caused her injuries—the possibility that the City's independent negligence may have proximately caused her injuries does not foreclose the City's defense under the allegations in the underlying complaint.

5

Requiring proof of causation would necessitate litigation of the factual issues in the underlying action, which is improper. As this Court already recognized in this action, citing another case in which Harleysville was a defendant, the Court is not to decide questions "that overlap[] with the merits of the underlying actions . . . in deciding this declaratory judgment action." *City of New York v. Harleysville Ins. Co.*, No. 22-cv-3306-RA-JLC, 2022 U.S. Dist. LEXIS 143039, at *4 (S.D.N.Y. Aug. 10, 2022) (ECF No. 24 at 3); *see also Greenwich Ins. Co. v. City of New York*, 122 A.D.3d 470, 471–72 (1st Dep't 2014) ("Whether plaintiff might ultimately be able to establish that its insured did not cause the injuries alleged in the underlying actions involves questions of fact yet to be resolved; it is not an issue that can be determined as a matter of law by examination of the insurance contract.").

### B.  The City Is Entitled to a Defense Under the "Additional Insured – Designated Person or Organization" Endorsement.

The City is entitled to coverage under the "Additional Insured – Designated Person or Organization" endorsement (the "AI Endorsement") of the Prestige policy. (ECF No. 31 at 2–3, 8–11.) The AI Endorsement's Schedule identifies the City of New York as an additional insured. R. 56.1 St. ¶ 6.[1] The AI Endorsement amends the Policy's definition of "insured" to include the City as an additional insured. Specifically, the AI Endorsement provides:

> **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury," "property damage," or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:
>
> A.  In the performance of your ongoing operations; or
> B.  In connection with your premises owned by or rented to you.

---

[1] As in the City's opening brief, citations to "R. 56.1 St." refer to Plaintiff's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 (ECF No. 30).

6

R. 56.1 St. ¶ 7.

The only part of this endorsement that Harleysville *presumes* the City has not satisfied is that "by the time of the alleged accident, i.e. October 18, 2019, Prestige was *presumably* no longer performing 'ongoing operations' at the Park." (ECF No. 35 at 7–8.) (emphasis added)  The City, however, has more than established that "the allegations within the four corners of the underlying complaint ***potentially*** give rise to a covered claim," and alternatively, that Harleysville, based on the documents provided by the City, "'has actual knowledge of facts establishing a ***reasonable possibility*** of coverage.'" *Frontier Insulation*, 91 N.Y.2d at 175 (emphases added).

Here, the *Calderon* complaint alleges bodily injury to the tort plaintiff caused by the acts or omissions of the City *or those acting on its behalf in the performance of their ongoing operations*, i.e., Prestige, and therefore falls within the Policy's coverage.  Specifically, the *Calderon* complaint alleges that alleges that, on October 18, 2019, the City *and its agents* owned, operated, managed, maintained, controlled, supervised, and had a duty to maintain the Playground in a safe condition and in good repair, including a certain gate located within the courtyard; M.M. was lawfully within the confines of the Playground when a certain gate located within the courtyard was caused to fall upon M.M., injuring her; and the incident was caused by the negligence of the City *and its agents*, servants, and/or employees in their ownership, operation, management, maintenance, design and/or control of the gate in the courtyard, including allowing the gate to become loose from the adjoining bracket.  R. 56.1 St. ¶¶ 10, 11.  The allegations are within the coverage of the Policy because they allege the reasonable possibility of bodily injuries caused by the acts or omissions of the City's agents, i.e., Prestige, in its ongoing operations under the contract.

Moreover, Harleysville had actual knowledge of facts establishing a reasonable possibility of ongoing operations, and thus, coverage. The documents provided by the City to Harleysville show that Prestige was instructed, by the Parks Department, to complete work on the fences by no later than October 11, 2019, just one week before the accident. (Whitman Decl. Ex. 8 (ECF No. 29-8) at NYC_CAL_000732.) The document states that, when work is completed, a final inspection will be scheduled and a certificate of final acceptance will be issued; the document does not state that Prestige actually completed work on time. *Id.* The close temporal proximity between the date Parks directed Prestige to finish work, including on fences and gates, and the date of the accident—just seven days—more than gives rise to a reasonable possibility of ongoing operations, and thus, coverage.

If that were not enough, however, the record establishes—contrary to Harleysville's claim—that Harleysville had actual knowledge that Prestige continued to perform work at the site of the accident location *for more than a year* after the accident. The very next document tendered to Harleysville was another report from the Parks Department, addressed to Prestige, concerning the same contract for work at the same location, dated October 28, 2020. (Whitman Decl. Ex. 8 (ECF No. 29-8) at NYC_CAL_000735.) This document, a "guarantee punch list inspection report," states that "A Guarantee Punch List Inspection was held on August 5, 2020, for the project as a whole, in connection with the above-captioned project," and that someone from Prestige was present. *Id.* The report informs Prestige that "[s]ome of the work and material involved does not satisfy the guarantee requirements and, therefore, the attached punch list was established. You are directed to complete the punch list by November 22, 2020."[2] *Id.* This document, actually known

---

[2] The copy of the October 28, 2020 report in the record and provided to Harleysville does not include the referenced attached punch list. The document, however, unquestionably puts Harleysville on notice that Prestige's work continued through at least October or November

8

to Harleysville, establishes that Prestige's work continued at the site of the accident well beyond the date of the accident, and more than establishes a "reasonable possibility" of ongoing operations, and thus, coverage.

Harleysville's claim that the *Calderon* complaint does not contain any allegations *directly* against Prestige is misleading and irrelevant. (ECF No. 35 at 11–12) (citing *Ohio Sec. Ins. Co. v. Travelers Indem. Co.*, No. 19-cv-1355 (AJN), 2021 U.S. Dist. LEXIS 38292, at *10 (S.D.N.Y. Mar. 1, 2021) (no coverage where complaint alleges negligence "solely and wholly" to named first-party defendants, not named-insured third-party defendant, and where New York Labor Law imposes nondelegable duty on first-party defendant property owner)). But the "four corners" of the *Calderon* complaint do <u>not</u> allege that the City was solely and independently negligent: the complaint specifically alleges that the City <u>and its agents, servants and/or employees</u> were negligent. R. 56.1 St. ¶ 11.

Harleysville also relies on the irrelevant fact that the City has not commenced a third-party action against Prestige. But, as discussed in the City's opening brief, it is irrelevant that Prestige is not itself a named defendant, either first- or third-party, in the *Calderon* action. Harleysville's duty to defend the City is triggered "whenever the allegations within the four corners of the underlying complaint potentially give rise to a covered claim, or where the insurer 'has actual knowledge of facts establishing a reasonable possibility of coverage,'" both of which are established here. *Frontier Insulation*, 91 N.Y.2d at 175; *see also Regal Constr. Corp. v. Nat'l Union Fire Ins. Co.*, 15 N.Y.3d 34, 39 (2010) (insurer had duty to defend additional insured, even though named insured not a named defendant and complaint alleged no negligence on part of

---

2020—well beyond the date of the accident—and that Prestige thus had "ongoing operations" at the site of the accident on the date of the accident.

9

named insured, where "there was a connection between the accident and [named insured's] work"); *WDF Inc. v. Harleysville Ins. Co. of N.Y.*, 193 A.D.3d 667, 667 (1st Dep't 2021) ("Harleysville had a duty to defend [additional insured] even though the underlying personal injury complaint contained no allegations that [named insured] was negligent, because Harleysville had actual knowledge of facts establishing a reasonable possibility of coverage."). As discussed above, both the four corners of the complaint, and Harleysville's actual knowledge, trigger Harleysville's duty to defend the City; whether the tort plaintiff named Prestige or whether the City commenced a third-party action against Prestige is irrelevant. Harleysville cites no authority to the contrary.

      **C.**      **The City Is Entitled to a Defense Under the "Additional Insured – Owners, Lessees or Contractors – Completed Operations – Automatic Status When Required in Construction Agreement With You" Endorsement.**

Harleysville argues that the operative endorsement is the "Additional Insured – Owners, Lessees or Contractors – Completed Operations – Automatic Status When Required in Construction Agreement With You" endorsement (the "Completed Operations Endorsement"), and that the City is not entitled to coverage under that endorsement. For the reasons discussed above (*supra* § I.B.), the allegations in the complaint, and the ample evidence provided to Harleysville, suggest more than a reasonable possibility that Prestige was engaged in ongoing operations at the time of the accident, and thus, that the City is entitled to coverage under the AI Endorsement. If, however, the Court concludes that the allegations in the underlying complaint are "unambiguously not covered" under the AI Endorsement, *150 Nassau St. Billiards, Inc.*, 2003 U.S. Dist. LEXIS 23028, at *14–15, then the City would be entitled to coverage under the Completed Operations Endorsement.

The Completed Operations Endorsement amends the Policy's definition of "insured" to include "any person or organization for whom [Prestige] is performing operations only as specified

10

under a written contract . . . that requires such person or organization to be added as an additional insured on your policy," and that such person

> is an additional insured only with respect to liability caused, in whole or in part, by the acts or omissions of [Prestige], or those acting on behalf of [Prestige], in the performance of [Prestige's] work for the additional insured and included in the "products-completed operations hazard" which was performed for that insured only as specified under the written contract.

(Whitman Decl. Ex. 5 (ECF No. 29-5) at 74.)  The term "products-completed operations hazard" is defined to include "all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work.'" (*Id.* at 47.) "Your work" is defined to include "(1) Work or operations performed by you or on your behalf; and (2) Materials, parts or equipment furnished in connection with such work or operations." (*Id.* at 48.)

Harleysville disputes only that the City "has failed to come forth with any evidence that the accident arose out of Prestige's completed operations for the City." (ECF No. 35 at 9) (emphasis deleted).  Again, the question here is what, liberally construed, the underlying complaint alleges, and what Harleysville actually knew.

The complaint alleges that, on October 18, 2019, M.M. was in the playground when a gate fell on her, and that the incident was caused by the negligence of the City *and its agents* in maintaining, designing, and/or controlling the gate, including allowing the gate to become loose. R. 56.1 St. ¶¶ 10, 11.  If, as Harleysville contends, Prestige was "no longer performing 'ongoing operations' at the Park" on the date of the accident, then this allegation potentially gives rise to a covered claim under the Completed Operations Endorsement, as, liberally construed, it alleges a defect in Prestige's design and control of the gate. *Frontier Insulation*, 91 N.Y.2d at 175; *Cook*, 7 N.Y.3d at 137.

That this endorsement would provide coverage for the City is confirmed by considering Harleysville's actual knowledge. The documents submitted to Harleysville include contract drawings showing Prestige's work in the park, including that Prestige would be installing fences and gates. (Whitman Decl. Ex. 8 (ECF No. 29-8) at 28.) If, as Harleysville contends, Prestige's work was completed, these documents prove more than a "reasonable possibility" of coverage. *Frontier Insulation*, 91 N.Y.2d at 175. Thus, not only is the City entitled to coverage and a defense under the AI Endorsement, but the Completed Operations Endorsement as well.[3]

## II. HARLEYSVILLE DOES NOT DISPUTE THAT THE CITY IS ENTITLED TO ATTORNEYS' FEES AND COSTS DEFENDING ITSELF IN THE *CALDERON* ACTION IF HARLEYSVILLE BREACHED ITS DUTY TO DEFEND THE CITY.

Should the Court find that the City is entitled to a defense in the *Calderon* action, the City is entitled to recoup its costs and fees incurred in defending itself in that action from the date the City first notified Harleysville of the claim to the date that Harleysville assumes the City's defense, including prejudgment interest. *National Union Fire Ins. Co. of Pittsburgh, PA v. Greenwich Ins. Co.*, 103 A.D.3d 473, 474 (1st Dep't 2013); *New York Univ. v. Royal Ins. Co.*, 200 A.D.2d 527, 528–29 (1st Dep't 1994); *ACP Servs. Corp. v. St. Paul Fire & Marine Ins. Co.*, 224 A.D.2d 961, 963 (4th Dep't 1996). Harleysville does not dispute this; instead, it needlessly spends pages of its brief making arguments about which there is no dispute: the City is not seeking to recover attorneys' fees and costs for the *Calderon* action prior to the date it tendered the claim to Harleysville, and the City is not seeking attorneys' fees and costs in the present declaratory-judgment action.

---

[3] Harleysville also contends that the City is not entitled to coverage under the Completed Operations Endorsement because the City has not proven proximate cause. (ECF No. 35 at 9–10.) But, for the reasons discussed *supra* in section I.A., Harleysville is wrong, as adjudicating the duty to defend does not require a finding of liability of a determination of the merits of the underlying action.

12

Harleysville does dispute, however, that the City is entitled to $350 per hour for attorney time and $100 per hour for paralegal time and takes issue with the fact that the City has not yet submitted contemporaneous records of its time. (ECF No. 35 at 15–16.) The Court, however, should conclude that the City is entitled to costs and expenses—which, again, is undisputed, should Harleysville be found in breach of its duty to defend the City—and defer resolution of the appropriateness of the rate and amount being sought. For example, in *City of New York v. Liberty Mutual Insurance Co.*, a judge of this court concluded as follows:

> Plaintiffs also ask, however, that this Court hold that specific rates of compensation for the Plaintiffs' attorneys are reasonable, notwithstanding the fact that they have not yet submitted papers seeking to establish the precise amount of damages to which they are entitled. The Court declines to determine what is a reasonable rate at this time. Instead, within one week of this order, the parties are ordered to propose a briefing schedule to determine the amount of damages owed to Plaintiffs as a result of Liberty's breach of its duty to defend. The Court will resolve all damages issues, including the relevant lodestar for the Plaintiffs' attorneys, in resolving the issues raised in that briefing.

No. 15-cv-8220 (AJN), 2017 U.S. Dist. LEXIS 164134, at *58–59 (S.D.N.Y. Sept. 28, 2017) (citation omitted); *see also, e.g.*, *Gen. Ins. Co. of Am. v. City of New York*, No. 04-cv-8946 (JCF), 2005 U.S. Dist. LEXIS 35864, at *22 (S.D.N.Y. Dec. 23, 2005) (granting City summary judgment, including request for attorneys' fees, and holding "[t]he City may make an application to the Court for a determination of the amounts to be awarded"); *Serio v. Pub. Serv. Mut. Ins. Co.*, 7 A.D.3d 277, 279 (1st Dep't 2004) (affirming trial court "properly determined that [insurer] was obligated to reimburse [insured] for any legal costs they expended until [insurer] took over, and properly referred the matter for a hearing to determine the extent of those costs"). Such an approach is logical, consistent with case law, and would conserve judicial resources, as it allows for the possibility that the City and Harleysville may resolve the amount of fees without involvement by the Court. Moreover, the City continues to incur costs and expenses defending itself in the

13

*Calderon* Action as a result of Harleysville's breach, and it would be premature to submit a request for an uncertain amount of fees at this time.[4]

Because the City has proven that Harleysville breached its duty to defend the City in the *Calderon* Action, and because Harleysville does not dispute that, in such an event, the City is entitled to attorneys' fees and costs, including prejudgment interest, the Court should order that the City is entitled to recover its fees and expenses and set a briefing schedule to resolve the amount and appropriateness of the fees.

## CONCLUSION

The City respectfully requests that the Court grant the City's motion for summary judgment on its third and fourth causes of action against Harleysville, and deny Harleysville's motion for summary judgment. This Court should declare that Harleysville must defend the City in the *Calderon* Action and must reimburse the City for the costs it has incurred defending itself since it tendered the defense of that action.

Dated:   December 16, 2022
         New York, New York

HON. SYLVIA O. HINDS-RADIX
*Corporation Counsel of the City of New York*
Attorney for Plaintiff

By:   _____
      Daniel R. Whitman
      Assistant Corporation Counsel
      100 Church Street, 20th Floor
      New York, NY 10007
      (212) 356-2283
      dwhitman@law.nyc.gov

---

[4] To the extent, however, that the Court wishes to determine the appropriateness of the City's rates at this time, the City reiterates the cases cited in its moving brief and notes that many of these rates were upheld years if not decades ago. Given inflation and currently prevailing market rates, the City's rates should be approved as minimum reasonable rates.