UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
THE CITY OF NEW YORK,   Case No.: 22-cv-03306
                        (RA) (JLC)

                Plaintiff,

  -against-

HARLEYSVILLE INSURANCE COMPANY,

                Defendant.
------------------------------------------------------------------------X

# MEMORANDUM OF LAW IN FURTHER SUPPORT OF HARLEYSVILLE'S CROSS-MOTION FOR SUMMARY JUDGMENT

Sarah M. Ziolkowski, Esq. (SZ1220)
MILBER MAKRIS PLOUSADIS
& SEIDEN, LLP
Attorneys for Defendant
1000 Woodbury Road, Suite 402
Woodbury, New York 11797
(516) 712-4000
File No.: 532-22601

# TABLE OF CONTENTS

Page

**TABLE OF AUTHORITIES** ..................................................................................................ii

**PRELIMINARY STATEMENT** ........................................................................................... 1

**ARGUMENT** ....................................................................................................................... 1

**POINT I** ................................................................................................................................ 1

    **THE CITY IS NOT ENTITLED TO ADDITIONAL INSURED COVERAGE IN THE *CALDERON* ACTION**

**POINT II** .............................................................................................................................. 7

    **THE CITY IS NOT ENTITLED TO REIMBURSEMENT OF DEFENSE FEES**

**CONCLUSION** ................................................................................................................... 8

# TABLE OF AUTHORITIES

**Page**

*Cases*
*American Motorist Ins. Co. v. Public Service Mutual Ins. Co.*,
  149 A.D.2d 552, 540 N.Y.S.2d 671 (2d Dep't 1989) ................................................................ 8
*Bigio v. Coca-Cola Co.*,
  675 F.3d 163 (2d Cir. 2012) ..................................................................................................... 4
*Commercial Union Assurance Co., PLC v. Oak Park Marina, Inc.*,
  198 F.3d 55 (2d Cir. 1999) ....................................................................................................... 2
*First Investment Corp. v. Liberty Mutual Insurance Co.*,
  152 F.3d 162 (2d Cir. 1998) ..................................................................................................... 2
*Flores v. United States*,
  885 F.3d 119 (2d Cir. 2018) ..................................................................................................... 7
*Kulak v. City of New York*,
  88 F.3d 63, 1996 WL 364767 (2d Cir. 1996) ........................................................................... 7
*Manley v. AmBase Corp.*,
  337 F.3d 237 (2d Cir. 2003) ..................................................................................................... 4
*N.Y. Marine & Gen. Ins. Co. v. Tradeline, LLC*,
  266 F.3d 112 (2d Cir. 2001) ..................................................................................................... 4
*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Greenwich Ins. Co.*,
  103 A.D.3d 473, 962 N.Y.S.2d 9 (2013) ................................................................................. 8
*Peleus Insurance Co. v. Atlantic State Development Corp.*,
  587 F. Supp. 3d 7 (S.D.N.Y. 2022) .......................................................................................... 2
*United States Underwriters Ins. Co. v. Image By J & K, LLC*,
  335 F. Supp. 3d 321 (E.D.N.Y. 2018) ..................................................................................... 5

*Rules*
Fed. R. Civ. P. Rule 56 ................................................................................................................ 1

*Other Authorities*
Restatement (Second) of Agency § 1 ........................................................................................... 4

# PRELIMINARY STATEMENT

This Memorandum of Law is submitted in further support of Defendant HARLEYSVILLE INSURANCE COMPANY'S ("HARLEYSVILLE") cross-motion for an Order, pursuant to Fed. R. Civ. P. Rule 56: (i) awarding HARLEYSVILLE summary judgment and dismissing the third and fourth causes of action asserted against HARLEYSVILLE in the Amended Complaint[1]; (ii) declaring that HARLEYSVILLE has no obligation to provide Plaintiff, THE CITY OF NEW YORK ("THE CITY"), with additional insured coverage and/or a defense in the underlying personal injury action of *M.M. ex rel. Belisa Calderon and Belisa Calderon v. The City of New York, New York City Department of Education, and New York City Board of Education*, pending in the Supreme Court of New York, New York County, under Index No. 151852/2020 (the "*Calderon* Action"); together with such other and further relief as this Court may deem just and proper. Specifically, this Memorandum of Law is submitted in reply to THE CITY's opposition to HARLEYSVILLE's cross-motion.

# ARGUMENT

## POINT I

### THE CITY IS NOT ENTITLED TO ADDITIONAL INSURED COVERAGE IN THE *CALDERON* ACTION

In opposing HARLEYSVILLE's cross-motion, THE CITY argues that the duty to defend is exceedingly broad and arises whenever there is a reasonable possibility of coverage. The Second Circuit has noted "[i]t is not, however, without limits." *Commercial Union Assurance Co., PLC v. Oak Park Marina, Inc.*, 198 F.3d 55, 59 (2d Cir. 1999), citing *First Investment Corp. v. Liberty*

---

[1] As argued in HARLEYSVILLE's initial moving papers, and not contested by the CITY in its opposition, THE CITY has indicated that it anticipates dismissing the first and second causes of action to the Amended Complaint, which relate to its claim for coverage in the underlying action of *Bimal Banerjee v. The City of New York, Francine Warren, Capri Landscaping Inc., and 439 5th Ave Realty Corp.*, pending in the Supreme Court of New York, Kings County, under Index No. 517717/2018 (the "Banerjee Action").

*Mutual Insurance Co.*, 152 F.3d 162 (2d Cir. 1998). This is because "[a]n insurer cannot be obliged to defend if there is no legal or factual allegation in the underlying complaint for which the insurer might eventually have to indemnify the insured." *Peleus Insurance Co. v. Atlantic State Development Corp.*, 587 F. Supp. 3d 7, 16 (S.D.N.Y. 2022), citing *Commercial Union Assurance Co., PLC v. Oak Park Marina, Inc.*, *supra.* It is respectfully submitted that HARLEYSVILLE has demonstrated that it has no duty to defend THE CITY in the *Calderon* Action as an additional insured under the Harleysville Policy and that an Order should be entered to that effect.

It is indisputable that HARLEYSVILLE's insured, Prestige Pavers of NYC Inc. ("Prestige"), is not a named party in the *Calderon* Action. Rather, only the CITY and its agencies have been named as defendants in the *Calderon* Action. *See e.g.,* Exhibit "B" to the Ziolkowski Dec.[2] In the Complaint, it is alleged that THE CITY owned Poor Richard's Park (the "Park"), which was adjacent to the Esperanza School. *Id. at* ¶12. THE CITY allegedly had a duty to keep the Park in a "reasonably safe and suitable condition and in good repair including a certain gate (approximately five feet wide and ten feet high) located within the courtyard," and that said gate was caused to fall upon the infant plaintiff resulting in injury. *Id*. *at* ¶27. Despite the *Calderon* Action having been commenced nearly three years ago, THE CITY has not commenced a third-party action against Prestige.[3]

Despite the absence of any allegation against Prestige in the *Calderon* Action, THE CITY contends that the Complaint alleges that "the City *and its agents* owned, operated, managed, maintained, controlled, supervised, and had a duty to maintain the Playground in a safe condition

---

[2] References to the "Ziolkowski Dec." refer to the Declaration of Sarah M. Ziolkowski, dated December 2, 2022.
[3] While THE CITY maintains that it is "irrelevant" that THE CITY has not commenced a third-party action against Prestige in the Calderon Action, HARLEYSVILLE disagrees and opines that said failure supports HARLEYSVILLE's contention that the accident was not in any way caused by or related to Prestige's work at the premises.

and in good repair," and that Prestige qualifies as THE CITY's agent for said purposes. *See e.g.* Reply Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment and in Opposition to the Defendant's Motion for Summary Judgment (the "CITY's Memorandum of Law") at p. 7 (emphasis in original). However, THE CITY has failed to come forth with any evidence that Prestige and THE CITY had an agency relationship with respect to the former's work for the latter.

Under New York law "an agency relationship results from a manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and the consent by the other to act." *Bigio v. Coca-Cola Co.,* 675 F.3d 163, 175 (2d Cir. 2012), quoting *N.Y. Marine & Gen. Ins. Co. v. Tradeline, LLC,* 266 F.3d 112, 122 (2d Cir. 2001). Agency requires a showing of "(1) the manifestation by the principal that the agent shall act for him, (2) the agent's acceptance of the undertaking, and (3) the parties' understanding "that the principal is to be in control of the undertaking." *Manley v. AmBase Corp.*, 337 F.3d 237, 246 (2d Cir. 2003), quoting *The Restatement (Second) of Agency* § 1.

While THE CITY contends that Prestige, which was a contractor it retained, should be treated as its agent for purposes of finding that a duty to defend has arisen, it has offered no documentary evidence to support this argument. Rather, the contract between THE CITY and Prestige refers to Prestige as the "contractor," which is defined, in totality, to mean "the entity which executed this Contract, whether a corporation, firm, partnership, joint venture, individual, or any combination thereof, and its, their, his/her successors, personal representatives, executors, administrators, and assigns, and any person, firm, partnership, joint venture, individual, or corporation which shall at any time be substituted in the place of the Contractor under this Contract." *See* Exhibit "D" to the Reply Declaration of Sarah M. Ziolkowski *at* 2.1.12. While the

contract does not define "agent," "agency" is defined to mean "mean a city, county, borough or other office, position, department, division, bureau, board or commission, or a corporation, institution or agency of government, the expenses of which are paid in whole or in part from the City treasury." *Id. at* 2.12. Therefore, THE CITY has failed to come forth with any evidence to support its contention that Prestige should be deemed its "agent" for purposes of triggering a defense obligation under the terms of the Harleysville Policy.[4]

The sole case that THE CITY relies upon to support to support this argument is that of *United States Underwriters Ins. Co. v. Image By J & K, LLC*, 335 F. Supp. 3d 321 (E.D.N.Y. 2018), wherein the court concluded, *without citation to legal authority*, that the plaintiff-insurer was obligated to provide additional insured coverage to the contractor which had been named as a defendant in the underlying lawsuit, but who's named insured had not so been named. United States Underwriters Ins. Co., insured Sphinx Cleaning Systems Inc. ("Sphinx"), which had subcontracted with Image By J & K, LLC ("Image"), to perform certain janitorial service for Walgreens. The court concluded, without any legal authority, that as the complaint in the underlying lawsuit alleged that "Image and its agents" caused plaintiff's injuries, a duty to defend Image as an insured had been triggered. This legal conclusion has not been cited to, or relied upon, by any court since the decision's publication in 2018. As such, it is clearly an outlier and should not be relied upon to find coverage when none exists. Rather, the evidence before this Court is that Prestige has not been named as a party in the *Calderon* Action either by the underlying plaintiff or by THE CITY.

---

[4] Moreover, reference in the Complaint to THE CITY's "agents" very well should be interpreted to mean THE CITY's co-defendants in the *Calderon* Action: the New York City Department of Education and the New York City Board of Education, which are in fact City agencies. *See* Exhibit "A" to the Ziolkowski Dec.

4

While THE CITY argues that HARLEYSVILLE has knowledge of facts that give rise to the possibility of coverage, it has failed to come forth with such evidence. Therefore, it is submitted that HARLEYSVILLE has demonstrated that it properly concluded that THE CITY was not entitled to additional insured coverage under the Harleysville Policy since the "Plaintiff has not asserted any direct allegations against Prestige Pavers of NYC.. therefore, a duty to defend has not been triggered." *See* Exhibit "11" to the Declaration of Daniel R. Whitman in Support of THE CITY's motion for summary judgment (the "Whitman Dec.")

Next, THE CITY contends that it is listed as a scheduled additional insured under the CG 2026 additional insured endorsement to the Harleysville Policy and, therefore, is entitled to coverage. However, as argued by HARLEYSVILLE in its initial moving papers, said endorsement only extended coverage for liability "caused, in whole or in part, by [Prestige's] acts or omissions or the acts or omissions of those acting on [Prestige's] behalf: **A.** In the performance of [Prestige's] ***ongoing operations***…" *See* Exhibit "5" to the Whitman Dec. at p. 64 (emphasis added). In its opposition, THE CITY has failed to come forth with any evidence that Prestige was performing "ongoing operations" at the time of the accident and merely relies upon conjecture that the "close temporal proximity" to when Prestige was to complete its work (October 11, 2019) and the date of the accident "gives rise to a reasonable possibility of ongoing operations." *See* THE CITY's Memorandum of Law at p. 8. It is well settled law that "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71, 1996 WL 364767 (2d Cir. 1996); *see also, Flores v. United States*, 885 F.3d 119 (2d Cir. 2018). The argument that Prestige continued to perform work after the October 11, 2019 date because another "punch list" was created after a "Guarantee Punch List Inspection []held on August 5, 2020," (*see* THE CITY's Memorandum of Law at p. 8) is speculative, at best,

and fails to support a finding that Prestige was performing any "ongoing" work at the time of the accident.

Rather, in moving for summary judgment, HARLEYSVILLE maintained that CG 7263 Complete Operations blanket additional insured endorsement to the Harleysville Policy is the one to be examined by this Court, as there was no evidence that Prestige had any "ongoing operations" being performed for THE CITY at the time of Calderon's October 18, 2019 accident. This endorsement provides coverage "only with respect to liability caused, in whole or in part, by the acts or omissions of the 'Named Insured' … in the performance if the 'Named Insured's' work for the additional insured and included in the 'products-completed operations hazard' which was performed for that insured only as specified under the 'written contract.'" *See* Exhibit "5" to the Whitman Dec. at 74. HARLEYSVILLE has established, and THE CITY has failed to rebut, a finding that said endorsement would only apply if the accident arose out Prestige's work. In opposing HARLEYSVILLE's motion, THE CITY has failed to come forth with *any* evidence that the accident arose out of Prestige's completed operations for THE CITY.

It is, therefore, respectfully submitted that HARLEYSVILLE has established that it properly denied THE CITY's request for additional insured coverage in the *Calderon* Action as the pleadings to said suit (i) do not contain any direct allegations against HARLEYSVILLE's insured, Prestige, and (ii) do not implicate that Prestige's work at the premises "caused, in whole or in part" the accident complained of. Moreover, in opposing HARLEYSVILLE's motion, THE CITY has failed to come forth with any evidence that HARLEYSVILLE had "actual knowledge of facts establishing a reasonable possibility of coverage." Consequently, an Order should be entered declaring that HARLEYSVILLE has no obligation to provide THE CITY with additional insured coverage and/or a defense in the *Calderon* Action.

**POINT II**

**THE CITY IS NOT ENTITLED TO REIMBURSEMENT OF DEFENSE FEES**

Finally, HARLEYSVILLE continues to maintain that should this Honorable Court determine that a duty to defend THE CITY in the *Calderon* Action has arisen, which HARLEYSVILLE vehemently denies, then said obligation would only date back to when THE CITY first placed HARLEYSVILLE on notice of said suit, *i.e.* on or about April 8, 2022. *See e.g., American Motorist Ins. Co. v. Public Service Mutual Ins. Co.*, 149 A.D.2d 552, 553, 540 N.Y.S.2d 671 (2d Dep't 1989) ("the defendant's liability for counsel fees commenced on June 29, 1983, the date upon which it was tendered a copy of the third-party complaint against its insured."); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Greenwich Ins. Co.*, 103 A.D.3d 473, 474, 962 N.Y.S.2d 9 (2013) ("[I]n the event of a breach of the insurer's duty to defend, the insured's damages are the expenses reasonably incurred by it in defending the action after the carrier's refusal to do so."). THE CITY does not dispute this point.

What the CITY disputes is the amount it is entitled to recover, maintaining in the Amended Complaint to this action that "when an insurance carrier wrongfully refuses its defense obligation, the Law Department charges the carrier $350 an hour for attorney time and $100 an hour for paralegal time." *See* Exhibit "1" to the Whitman Dec. at ¶52. Now, in opposing this motion, THE CITY backs away from said assertion and suggests that this Court "defer resolution of the appropriateness of the rate and amount being sought" and "set a briefing schedule to resolve the amount and appropriateness of the fees." *See* Plaintiff's Memorandum of Law at p. 13-14. Should it be determined by this Court that HARLEYSVILLE is obligated to reimburse THE CITY for past defense costs incurred in the *Calderon* Action, then it is submitted that this would be an appropriate manner for resolution of said claim as HARLEYSVILLE has established in its moving

papers that the rates requested by THE CITY in its Amended Complaint are both excessive and wholly improper given the nature of the *Calderon* Action.

## **CONCLUSION**

Based upon the foregoing, and the arguments advanced in HARLEYSVILLE's initial cross-motion papers, it is submitted that HARLEYSVILLE's cross-motion be granted in its entirety and a declaration issued that THE CITY is not an additional insured under the Harleysville Policy such that HARLEYSVILLE is not obligated to defend THE CITY in the *Calderon* Action, along with such other further and different relief as to the Court may deem, just, proper, and equitable.

Dated: Woodbury, New York
      December 29, 2022

By: _/s/ Sarah M. Ziolkowski_
    SARAH M. ZIOLKOWSKI   (SZ1220)