```
USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED:
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE CITY OF NEW YORK,

                Plaintiff,

        v.

HARLEYSVILLE INSURANCE COMPANY,

                Defendant.

No. 22-CV-3306 (RA)

MEMORANDUM
OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

The City of New York (the "City") brings this insurance action against Harleysville Insurance Company ("Harleysville") with respect to Harleysville's alleged duty to defend the City in an underlying personal injury action. The parties now cross-move for summary judgement on the third and fourth causes of action in the Amended Complaint.[1] For the reasons that follow, Harleysville's motion for summary judgment is denied, and the City's motion for summary judgment is granted.

## BACKGROUND

The following facts are undisputed unless otherwise noted. In 2018, Prestige Pavers of NYC Inc. ("Prestige") entered into a contract with the City, acting through the New York City Department of Parks and Recreation (the "Parks Department"), to reconstruct the Second Avenue entrance path at Poor Richard's Playground, located at East 109th Street between Second and Third

---

[1] The first and second causes of action in the Amended Complaint relate to a separate underlying tort action, captioned *Banerjee v. City of New York*, No. 517717/2018 (the "*Banerjee* Action"). The City has represented to the Court that "[o]ne of the two tort actions underlying this declaratory-judgment action (the *Banerjee* action) has settled, and the City anticipates dismissing its claims related to that case." ECF No. 25. The parties thus cross-move for summary judgment only with respect to the third and fourth causes of action. *See* Harleysville 56.1 Statement ¶ 32.

Avenues in Manhattan. City 56.1 Statement ¶ 1. Prestige is a named insured under a commercial general liability policy issued by Harleysville (the "Policy"), covering the policy period from June 1, 2019 to June 1, 2020. *Id.* ¶¶ 2-3. The Policy provides for a duty to defend, stating, in relevant part:

> **1. Insuring Agreement**
>
> > a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. . . . We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

Whitman Decl., Ex. 5, at 33. The Policy also includes additional insured endorsements. One endorsement, labeled "Additional Insured – Designated Person or Organization" (the "Designated Person Endorsement"), identifies "The City of New York" as an additional insured and provides:

> **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury," "property damage," or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:
>
> > **A.** In the performance of your ongoing operations; or
> > **B.** In connection with your premises owned by or rented to you.

*Id.* at 65. Another endorsement, labeled "Additional Insured – Owners, Lessees or Contractors – Completed Operations – Automatic Status When Required in Construction Agreement With You" (the "Completed Operations Endorsement"), similarly provides:

> **Section II – Who Is An Insured** is amended to include as an insured any person or organization for whom you are performing operations only as specified under a written contract . . . that requires that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability caused, in whole or in part, by the acts or omissions of the "Named Insured," or those acting on behalf of the "Named Insured," in the performance of the "Named Insured's" work for the additional insured . . . .

*Id.* at 74.

On February 19, 2020, M.M., a minor child, by her mother and natural guardian Belisa Calderon, filed an action in New York State Supreme Court captioned *M.M. ex rel. Calderon and Calderon v. City of New York, New York City Department of Education, and New York City Board of Education*, No. 151852/2020 (the "*Calderon* Action"). *Id.* ¶ 9; *see* Ziolkowski Decl., Ex. 1 (the "*Calderon* Complaint"). Prestige is not named as a defendant in the *Calderon* Action. The *Calderon* Complaint alleges, in relevant part, that on October 18, 2019, M.M. was lawfully within the confines of Poor Richard's Playground "when a certain gate . . . was caused to fall upon her causing her serious and permanent personal injuries." Ziolkowski Decl., Ex. 1, ¶ 36. It further alleges that "it was the duty of defendant, CITY OF NEW YORK, its agents[,] servants[,] and or employees to maintain POOR RICHARD'S COURT . . . in a reasonably safe and suitable condition and in good repair," including the gate that allegedly injured M.M., *id.* ¶ 19, and that "[t]he CITY . . . their agents, servants and/or employees were negligent in the ownership, operation, management, maintenance, design and/or control of supervision and control of aforementioned GATE and courtyard . . . in causing, permitting and allowing the gate to become loose from the adjoining bracket . . . ," *id.* ¶ 39. The *Calderon* Action is still pending, and no determination of liability has yet been made. Harleysville 56.1 Statement ¶¶ 28-30.

On April 8, 2022, the New York City Law Department ("Law Department"), on behalf of the City, notified Harleysville of the *Calderon* Action and demanded a defense under the Policy. City 56.1 Statement ¶ 12. On April 12, 2022, a Harleysville claim specialist responded requesting the City's contract with Prestige, the notice of the claim, and the 50-h hearing transcript. *Id.* ¶ 14. The Law Department sent Harleysville the Prestige contract, the notice of the claim, an exhibit from the 50-h hearing showing the gate that allegedly fell and injured M.M., the verified bill of particulars, and documentation from the Parks Department (the "Park Documents"). *Id.* ¶ 15. The

3

Park Documents include a "Substantial Completion Inspection Report" dated August 12, 2019, which is addressed to Prestige and states, with respect to the Playground: "A copy of the 'Final Punch List' is attached to this report. You are directed to complete all of the items on the 'Final Punch List' no later than October 11, 2019." Whitman Decl., Ex. 8, at 20. The attached "Final Punch List" includes the following entries: "Construction fence will stay in place until further notice" and "Install gate stops for all steel hoop fence gates." *Id.* at 21. The Park Documents also include a "Guarantee Punch List Inspection Report" dated October 28, 2020—over a year later—which is again addressed to Prestige and states, "Some of the work and material involved does not satisfy the guarantee requirements, and, therefore, the attached punch list was established. You are directed to complete the punch list by November 22, 2020." *Id.* at 23.

On April 25, 2022, Harleysville wrote a letter to the Law Department refusing to assume the defense of the *Calderon* Action. City 56.1 Statement ¶ 18. Harleysville stated the following grounds for refusal:

> The contract does not contain language that requires our insured to defend and indemnify the City for their sole independent negligence. In addition, this matter has not yet been adjudicated. Therefore, we are unable to accept the tender for defense or indemnification on a contractual basis at this time. In addition, plaintiff has not asserted any direct allegations against Prestige Pavers of NYC Inc. in this lawsuit. Therefore, a duty to defend has not been triggered in this case.

Whitman Decl., Ex. 11. On May 2, 2022, the Law Department responded as follows: "Our investigation indicates that the gate in question that fell on plaintiff has been installed by your insured, Prestige Pavers. In order for an insurer to be obligated to defend an insured, the underlying tort suit need only *allege* action that is *potentially* covered by the policy . . . That is the case here." Whitman Decl., Ex. 12 (emphasis in original). Harleysville responded once more on May 11, 2022, stating:

4

> The City would not qualify as an additional insured under Prestige Pavers of NYC's policy at this time. Additional insured status would apply only with respect to liability caused in whole or in part by our insured's acts or omissions. Based on our investigation to date, there is no evidence that our insured caused in whole or in part the incident for which coverage is being sought. In addition, plaintiff has not asserted any direct allegations against Prestige Pavers of NYC Inc. in this lawsuit. Therefore, a duty to defend has not been triggered in this case.

Whitman Decl., Ex. 13. The City filed this federal action seeking a declaration that Harleysville is obligated to defend the City in the *Calderon* Action, and both parties now move for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *WWBITV, Inc. v. Vill. of Rouses Point*, 589 F.3d 46, 49 (2d Cir. 2009) (internal quotation marks omitted). In determining whether there is a genuine issue of material fact, the Court must view all facts "in the light most favorable to the non-moving party." *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008). On cross-motions for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

## DISCUSSION

"In New York, an insurer's duty to defend is exceedingly broad and distinct from the duty to indemnify." *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 140 (2d Cir. 2014) (internal quotation marks omitted). "[A]n insurer will be called upon to provide a defense

whenever the allegations of the complaint suggest a reasonable possibility of coverage." *Brooklyn Ctr. for Psychotherapy, Inc. v. Phila. Indem. Ins. Co.*, 955 F.3d 305, 310 (2d Cir. 2020) (quoting *Auto. Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (2006)). "Thus, an insurer may be required to defend under the contract even though it may not be required to pay once the litigation has run its course." *Id.*; *see also Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61, 65-66 (1991) ("[T]he duty to defend is broader than the duty to indemnify . . . an insurer may be contractually bound to defend even though it may not ultimately be bound to pay, either because its insured is not factually or legally liable or because the occurrence is later proven to be outside the policy's coverage.").

While the insured bears the burden of establishing coverage, *see Ohio Sec. Ins. Co. v. Travelers Indem. Co. of Conn.*, 2021 WL 797670, at *3 (S.D.N.Y. Mar. 1, 2021), "[a]ny doubt as to whether the allegations state a claim within the coverage of the policy must be resolved in favor of the insured and against the carrier," *Euchner-USA, Inc.*, 754 F.3d at 141 (quoting *Brook Shopping Ctr. v. Liberty Mut. Ins. Co.*, 439 N.Y.S.2d 10, 12 (App. Div. 1981)). "If, liberally construed, the claim is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be." *Id.* (quoting *Auto. Ins. Co. of Hartford*, 7 N.Y.3d at 137). "Put another way, a defendant has no obligation to defend *only if* it can be concluded as a matter of law that there is no possible factual or legal basis on which the defendant might eventually be held to be obligated to indemnify [the] plaintiff under any provision of the insurance policies." *Brooklyn Ctr. for Psychotherapy, Inc.*, 955 F.3d at 310 (emphasis added) (quoting *Mary & Alice Ford Nursing Home Co. v. Fireman's Ins. Co. of Newark*, 446 N.Y.S.2d 599, 600 (App. Div. 1982)); *see also Century 21, Inc. v. Diamond State Ins. Co.*, 442 F.3d 79, 82-83 (2d Cir. 2006) (quoting *Servidone Constr. Corp. v. Security Ins. Co. of Hartford*, 64 N.Y.2d 419, 424 (1985)) ("Although the duty to defend will not be imposed through a strained,

6

implausible reading of the complaint that is linguistically conceivable but tortured and unreasonable . . . a defense obligation may be avoided only where there is no possible factual or legal basis on which an insurer's duty to indemnify under any provision of the policy could be held to attach." (internal quotation marks omitted)); *Fitzpatrick*, 78 N.Y.2d at 66 (quoting *Technicon Elecs. Corp. v. Am. Home Assur. Co.*, 74 N.Y.2d 66, 73 (1989)) ("[T]he duty to defend exists 'if the complaint contains any facts or allegations which bring the claim even potentially within the protection purchased.'").  "[T]he obligation of an insurer to provide a defense to an additional named insured under the policy exists to the same extent as it does to a named insured." *BP Air Conditioning Corp. v. One Beacon Ins. Grp.*, 8 N.Y.3d 708, 711 (2007).

The City argues that the *Calderon* Complaint presents a "reasonably possibility of coverage" under the Policy because the Complaint alleges that the City and "its agents," i.e., Prestige, had a duty to maintain the safety of the Playground, and that the incident was caused by the negligence of the City and "its agents . . . in their ownership, operation, management, maintenance, design and/or control" of the gate in question. Pl. Br. 9-10.  Harleysville counters that the Policy's endorsements only add an additional insured "with respect to liability for 'bodily injury' . . . caused, in whole or in part, by the acts or omissions of the 'Named Insured.'" Def. Br. 8-9. According to Harleysville, the City "has failed to establish that the accident was proximately 'caused, in whole or in part by' Prestige's 'acts or omissions,'" and the City thus "does not qualify for additional insured coverage under the Harleysville Policy." *Id.* at 10.  In effect, Harleysville argues that because the City has not *proven* that it is entitled to coverage as an additional insured, Harleysville has no duty to defend.

Harleysville's argument misconstrues the applicable law.  To invoke a duty to defend—which the Policy expressly provides for, *see* Whitman Decl., Ex. 5, at 33—the City need only

demonstrate that the allegations in the *Calderon* Complaint "suggest a reasonable possibility of coverage" under the Policy. *Brooklyn Ctr. for Psychotherapy*, 955 F.3d at 310. The City has carried this burden, as there is a "reasonable possibility" that Prestige, as a contractor, was acting as the City's agent, and a "reasonable possibility" that the gate in question fell due to Prestige's negligence.[2] While neither of these facts have yet been proven, the City is not obligated to *prove* that they are entitled to coverage at this stage in order to invoke Harleysville's duty to defend. *See Century 21, Inc.*, 442 F.3d at 83 (quoting *Hugo Boss Fashions, Inc. v. Federal Ins. Co.*, 252 F.3d 608, 620 (2d Cir. 2001)) ("New York cases establish that so long as claims asserted against the insured may rationally be said to fall within policy coverage, whatever may later prove to be the limits of the insurer's responsibility to pay, there is no doubt that it is obligated to defend." (internal quotation marks and alterations omitted)); *Fitzpatrick*, 78 N.Y.2d at 65-66 ("[A]n insurer may be contractually bound to defend even though it may not ultimately be bound to pay, either because its insured is not factually or legally liable or because the occurrence is later proven to be outside the policy's coverage."); *see also, e.g.*, *Houston Cas. Co. v. Hudson Excess Ins. Co.*, 2021 WL 4555526, at *4 (S.D.N.Y. Oct. 4, 2021) (finding that the insurer has a duty to defend the additional insured because the underlying complaint "suggests a reasonable possibility that [the named

---

[2] As a factual matter, the parties dispute whether Prestige was still working on the Playground on the date of M.M's injury. Harleysville relies on the fact that the first "Punch List" contained in the Park Documents directed Prestige to complete the items by October 11, 2019, and thus, according to Harleysville, "by the time of the alleged accident, i.e., October 18, 2019, Prestige was presumably no longer performing 'ongoing operations' at the Park." Def. Br. 8. The City, on the other hand, points to the second "Punch List," also addressed to Prestige, which is dated October 28, 2020—over a year later—and seems to suggest that Prestige did not complete its work as scheduled. In any event, the City argues that "[t]he close temporal proximity between the date [the Parks Department] directed Prestige to finish work, including on fences and gates, and the date of the accident—just seven days—more than gives rise to a reasonable possibility of ongoing operations." Pl. Reply Br. 8. The Court agrees. Even if it could be said that an ambiguity exists as to whether Prestige was still working on the Playground on the day of the incident, "[i]t is well settled that 'where there is ambiguity as to the existence of coverage, doubt is to be resolved in favor of the insured and against the insurer.'" *Int'l Bus. Machs. Corp. v. Liberty Mut. Fire Ins. Co.*, 303 F.3d 419, 424-25 (2d Cir. 2002) (quoting *Handelsman v. Sea Ins. Co. Ltd.*, 85 N.Y.2d 96, 101 (1994)).

insured's actions] is the proximate cause of Ms. Okowsky's injuries," which "thus sugget[s] a reasonable possibility of coverage").

Harleysville relies primarily on two cases, *Burlington Insurance Co. v. New York City Transit Authority*, 29 N.Y.3d 313 (2017) and *Hanover Insurance Co. v. Philadelphia Indemnity Insurance Co.*, 73 N.Y.S.3d 549 (App. Div. 2018), but both are inapposite. *Burlington* addressed a dispute over indemnification—in other words, the duty of an insurer to pay, rather than to defend—and found no coverage based on evidence that the named insured was not at fault. 29 N.Y.3d at 317, 321-25. It is "well-settled," however, that "an insurance company's duty to defend is broader than its duty to indemnify," *Auto. Ins. Co. of Hartford*, 7 N.Y.3d at 137, in that, as discussed, the duty to defend is based only on the "reasonable possibility of coverage" and not definitive proof of coverage. *Hanover Insurance*, similarly, involved a finding that the sole proximate cause of the injury was attributable to the additional insured, not the named insured. 73 N.Y.S.3d at 550. It may be established later on that Prestige's acts or omissions were not the proximate cause of M.M.'s injuries, thereby taking the *Calderon* Action outside the scope of the Policy. But until then, there remains a "possible factual or legal basis on which [Harleysville] *might* eventually be held to be obligated to indemnify [the City]" under the Policy, and that obligates Harleysville to provide a defense. *Brooklyn Ctr. for Psychotherapy, Inc.*, 955 F.3d at 310 (emphasis added); *see also Century 21, Inc.*, 442 F.3d at 83 (quoting *Hugo Boss Fashions, Inc.*, 252 F.3d at 620) ("[A] separate contractual duty to defend exists, and perdures until it is determined *with certainty* that the policy does not provide coverage." (emphasis in original)).

Finally, Harleysville contends that it has no duty to defend because "there has been no finding of liability in the *Calderon* Action—to which the City and its agencies remain the sole defendants." Def. Br. 2. However, "additional insured coverage is not contingent upon a liability

9

finding," *BP Air Conditioning Corp.*, 8 N.Y.3d at 711, and it is also "of no moment that . . . the named insured on the [insurance] policy was not named in the [underlying] complaint," *Charter Oak Fire Ins. Co. v. Zurich Am. Ins. Co.*, 462 F. Supp. 3d 317, 324 (S.D.N.Y. 2020) (quoting *City of New York v. Wausau Underwriters Ins. Co.*, 45 N.Y.S.3d 3, 7 (App. Div. 2016)). The City is thus entitled to a defense in the *Calderon* Action as an additional insured under the Policy, at least until the incident "is later proven to be outside the policy's coverage," if so. *Fitzpatrick*, 78 N.Y.2d at 65.

## CONCLUSION

For the foregoing reasons, Harleysville motion for summary judgement is denied, and the City's motion for summary judgment is granted.

The City has also requested attorney's fees and costs incurred from defending itself in the *Calderon* Action, from the date it first tendered its claim to Harleysville on April 8, 2022, to the date Harleysville assumes the City's defense. The Court agrees that the City is entitled to such fees and costs, *see Houston Cas. Co. v. Prosight Specialty Ins. Co.*, 462 F. Supp. 3d 443, 451-53 (S.D.N.Y. 2020), but defers determination of the appropriate amount, because the City has not yet submitted time records in support of its request, *see Marion S. Mishkin Law Office v. Lopalo*, 767 F.3d 144, 147-48 (2d Cir. 2014). Within one week of the date of this Memorandum Opinion and Order, the parties shall submit a proposed briefing schedule for the determination of attorney's fees and costs in this action.

The Clerk of Court is respectfully directed to terminate the motions pending at ECF No. 28 and 32.

Dated:    July 14, 2023
          New York, New York

                                              Ronnie Abrams
                                              United States District Judge